[This decision has been published in *Ohio Official Reports* at 96 Ohio St.3d 266.]

WALLACE ET AL., APPELLANTS, *v.* OHIO DEPARTMENT OF COMMERCE,

DIVISION OF STATE FIRE MARSHAL, APPELLEE.

[Cite as *Wallace v. Ohio Dept. of Commerce, Div. of State Fire Marshal*,

2002-Ohio-4210.]

*Torts—Negligence—State may not raise the "public-duty rule" in an action in the*
*Court of Claims alleging negligent inspection by the Ohio Department of*
*Commerce, Division of the Fire Marshal, because public-duty rule is*
*inconsistent with the express language of the Court of Claims Act.*

(No. 2000-2178—Submitted December 11, 2001—Decided September 4, 2002.)

APPEAL from the Court of Appeals for Franklin County, No. 99AP-1303.

_____

SYLLABUS OF THE COURT

1.  The public-duty rule is incompatible with R.C. 2743.02(A)(1)'s express
    language requiring that the state's liability in the Court of Claims be
    determined "in accordance with the same rules of law applicable to suits
    between private parties." In negligence suits against the state, the Court of
    Claims must determine the existence of a legal duty using conventional tort
    principles that would be applicable if the defendant were a private
    individual or entity. (*Hurst v. Ohio Dept. of Rehab. & Corr.* [1995], 72
    Ohio St.3d 325, 650 N.E.2d 104, and *Anderson v. Ohio Dept. of Ins.* [1991],
    58 Ohio St.3d 215, 569 N.E.2d 1042, overruled to the extent inconsistent
    herewith; *Sawicki v. Ottawa Hills* [1988], 37 Ohio St.3d 222, 525 N.E.2d
    468, distinguished.)

2.  The language in R.C. 2743.02 that the state shall "have its liability determined
    * * * in accordance with the same rules of law applicable to suits between
    private parties" means that the state cannot be sued for its legislative or

judicial functions or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion. However, once the decision has been made to engage in a certain activity or function, the state may be held liable, in the same manner as private parties, for the negligence of the actions of its employees and agents in the performance of that activity or function. (*Reynolds v. State* [1984], 14 Ohio St.3d 68, 14 OBR 506, 471 N.E.2d 776, paragraph one of the syllabus, approved.)

_____

**COOK, J.**

**{¶1}** This case asks us to decide whether the state may raise the public-duty rule as a bar to liability in an action in the Court of Claims alleging negligent inspection by the Ohio Department of Commerce, Division of the Fire Marshal ("fire marshal"). Because the public-duty rule is inconsistent with the express language of the Court of Claims Act, we hold that the state may not.

I

**{¶2}** On July 3, 1996, Todd Hall carried a lit cigarette into the Ohio River Fireworks store in Scottown, Lawrence County, Ohio. Before store employees could intervene, Hall used the cigarette to ignite a stack of "crackling wheel" fireworks. Those fireworks ignited other fireworks in the store and caused a devastating fire, which killed nine people and injured several others.[1] Although the store was equipped with a sprinkler system, the system was disabled at the time of the blaze.

---

1. A Lawrence County grand jury later indicted Hall on multiple counts of involuntary manslaughter and aggravated arson. See *State v. Hall* (2001), 141 Ohio App.3d 561, 564, 752 N.E.2d 318. Hall, who suffers from a severe mental disorder, has been declared incompetent to stand trial several times. Id. at 565-566, 752 N.E.2d 318

**{¶3}** On the day of the fire, Flying Dragon, Inc., held a valid fireworks wholesaler license, issued by the fire marshal, to operate the Ohio River Fireworks store. As a condition of licensure, James Saddler, a certified safety inspector employed by the fire marshal, had inspected the Ohio River Fireworks store in October 1995 as required by statute. See R.C. 3743.16. During the mandatory licensing inspection, Saddler had tested the store's sprinkler system and found it to be operational. Saddler noted no safety violations and recommended approving the store's license renewal application.

**{¶4}** In addition to the mandatory annual licensing inspection, Ohio River Fireworks was also subject to R.C. 3743.21(A), which authorizes the fire marshal to inspect a licensed wholesaler's premises at any time during the license period.[2] Prior to 1996, as a matter of internal policy, the chief of the fire marshal's code enforcement bureau encouraged inspectors to make seasonal inspections of fireworks establishments during the July 4th fireworks season to ensure compliance with applicable statutes and safety regulations. Under this policy, Saddler performed two such seasonal inspections of the Ohio River Fireworks facility during the spring of 1995 and found the store's sprinkler system to be functional. In May 1996, Daniel L. Lehman, then acting as chief of the fire marshal's code enforcement bureau, reiterated the policy in an interoffice memorandum:

**{¶5}** "Although the annual licensing inspection is conducted during the renewal period in the fourth quarter of each calendar year, it is important to have every licensed fireworks facility visited by an inspector between now and July 4, 1996. The minimum acceptable level of activity is one visit to each facility, and

---

2. R.C. 3743.21(A) provides: "The fire marshal may inspect the premises, and the inventory, wholesale sale, and retail sale records, of a licensed wholesaler of fireworks during the wholesaler's period of licensure to determine whether the wholesaler is in compliance with Chapter 3743. of the Revised Code and the rules adopted by the fire marshal pursuant to section 3743.18 of the Revised Code."

return visits should be as needed and in consultation with the respective supervisor. The licensed facilities should be appropriately monitored by these cursory inspections to check for overall compliance during this peak period."

{¶6} In June 1996, a commercial competitor of the Ohio River Fireworks store informed the fire marshal that Ohio River Fireworks was advertising and selling Class B fireworks to individuals who were not authorized to purchase them. See former R.C. 3743.45(B), 1995 Am.Sub.S.B. No. 2, 146 Ohio Laws, Part IV, 7647 (forbidding licensed wholesalers to sell Class B fireworks to an Ohio resident who is not a licensed wholesaler, manufacturer, or exhibitor); see, also, R.C. 3743.44(A) (setting forth similar restriction on sales to nonresident purchasers).[3] After learning of this possible violation, Michael Kraft—then acting as the assistant chief of the fire marshal's code enforcement bureau—organized a "buy bust" operation during which fire marshal agents would attempt to purchase Class B fireworks without a proper license. To prevent the planned operation from being compromised, Kraft and Lehman postponed any seasonal inspection of the Ohio River Fireworks store until after they had completed the buy bust. As a result of this directive, Saddler did not perform a seasonal inspection of the Ohio River Fireworks facility prior to the fire.

{¶7} Five days before the fatal fire, arson investigator Donald Eifler posed as a customer at Ohio River Fireworks and successfully purchased Class B fireworks without being required to show authorization to do so. When the buy bust was complete, Kraft retrieved the money used in the operation for evidentiary purposes and ordered the store's proprietor to stop selling Class B fireworks to

---

3. The statutory and regulatory nomenclature for fireworks has since changed. The statutes now refer to Class B fireworks as "1.4G fireworks." In addition, fireworks that were formerly referred to as "Class C fireworks" are now known as "1.3G fireworks." See Section 215, 1997 Am.Sub.H.B. No. 215, 147 Ohio Laws, Part I, 1353.

unauthorized purchasers. None of the three fire marshal agents who were present at the buy bust conducted a fire safety inspection at any time that day.

{¶8} The appellants, persons injured in the fire and administrators of the decedents' estates, filed this lawsuit in the Court of Claims, alleging negligence claims against the fire marshal. The amended complaint alleged, among other things, that the fire marshal was negligent in failing to perform an adequate fire safety inspection on the date of the buy bust and otherwise failing to comply with the internal policy of conducting seasonal inspections during the peak fireworks season. The appellants further alleged that a reasonable inspection by the fire marshal would have revealed the store's inoperable sprinkler system and a host of other fire hazards.

{¶9} At trial, the appellants presented testimony indicating that the store's sprinkler system was turned off at the time of the fire. The appellants also presented testimony suggesting that the shutdown of the sprinkler system was not an isolated occurrence: inspector Thomas Baker testified that he had found the sprinkler system shut down during a "walk through" he performed at the Ohio River Fireworks store in July 1994. In addition, the appellants offered testimony from two experts, who opined that the decedents would have had a good chance of surviving the fire if the sprinkler system had functioned properly. Another expert testified that any one of the fire marshal agents who were present for the buy bust could have easily determined whether the sprinkler system was operational. This expert also added that a safety inspection on the day of the buy bust would have revealed several other fire hazards throughout the store that should have been remedied.

{¶10} Following a four-day trial limited to the issue of liability, the Court of Claims ruled in favor of the fire marshal. In its written opinion, the court gave three distinct reasons for its decision. First, the court found that the fire marshal's failure to conduct an additional seasonal inspection at the Ohio River Fireworks facility resulted from a "high degree of discretion" exercised by Chief Lehman.

The court therefore concluded that liability was precluded by the discretionary-function immunity recognized by this court in *Reynolds v. State* (1984), 14 Ohio St.3d 68, 14 OBR 506, 471 N.E.2d 776, paragraph one of the syllabus. Second, the court found that the public-duty rule precluded liability against the fire marshal. Invoking this court's decision in *Sawicki v. Ottawa Hills* (1988), 37 Ohio St.3d 222, 525 N.E.2d 468, the Court of Claims ruled that the fire marshal's inspection duties were "owed to the general public" and that the appellants had failed to establish a "special relationship" between them and the fire marshal that would preclude application of the public-duty rule. Finally, the Court of Claims decided that the proximate cause of the appellants' harm was Hall's criminal act of arson. The court concluded that this criminal act "could not have been foreseen by a reasonably prudent person" and thus broke any chain of causation that existed between any negligence by the fire marshal and the harm suffered by the appellants.

{¶11} The appellants appealed to the court of appeals, which found the public-duty rule to be dispositive of the action. The court of appeals held that statutes authorizing inspections by the fire marshal were designed to protect the public generally and not any particular individual. The court further agreed with the Court of Claims that there existed no special relationship between the fire marshal and the injured parties that would preclude application of the public-duty rule. The court of appeals therefore affirmed the Court of Claims' judgment based on the public-duty rule and declared the appellants' remaining assignments of error moot. The cause is now before this court pursuant to the allowance of a discretionary appeal.

II

{¶12} The principal focus of this appeal is the applicability of the public-duty rule to actions against the state and its agencies in the Court of Claims. The appellants argue that the public-duty rule is inconsistent with R.C. 2743.02(A)(1)'s express authorization of suits against the state in the Court of Claims. Alternatively,

6

the appellants argue that the public-duty rule, if available as a defense to negligence actions against the state, functions as a vestige of state sovereign immunity and therefore violates Section 16, Article I of the Ohio Constitution. Finally, the appellants argue that even if the public-duty rule were statutorily and constitutionally valid, the rule is inapplicable to the circumstances in this case.

{¶13} In *Sawicki v. Ottawa Hills*, 37 Ohio St.3d 222, 525 N.E.2d 468, this court addressed whether a municipality could be held liable for negligently failing to provide adequate police protection in response to a call for help from the victim of an attempted rape and robbery. This court held that the village of Ottawa Hills could not be held liable for the negligence alleged because of the public-duty rule. This common-law doctrine, which "originated at English common law and was particularly applied to the office of [the] sheriff," precludes a private party from sustaining a cause of action against a public officer for breach of a public duty. Id. at 229-230, 525 N.E.2d 468; see, also, *South v. Maryland* (1855), 59 U.S. (18 How.) 396, 403, 15 L.Ed. 433. In other words, a public entity owes a duty only to the general public when performing its functions and is therefore not liable for torts committed against an individual absent a special duty owed to the injured person. See *Stone v. North Carolina Dept. of Labor* (1998), 347 N.C. 473, 477-478, 495 S.E.2d 711; *Fudge v. Kansas City* (1986), 239 Kan. 369, 372, 720 P.2d 1093.

{¶14} Various public-policy considerations are the principal justification for the doctrine. Primary among these is the protection of the public fisc from lawsuits tending to second-guess the allocation of scarce resources. *Sawicki*, 37 Ohio St.3d at 231, 525 N.E.2d 468. Because individuals, juries, and courts are "ill-equipped to judge governmental decisions as to how particular community resources should be or should have been allocated to protect individual members of the public," courts have used the public-duty rule to shield public entities from the "severe depletion of those resources" that could result from imposing liability for "every oversight or omission" by a public official. *Ezell v. Cockrell* (Tenn.1995),

902 S.W.2d 394, 398; see, also, *Tipton v. Tabor* (S.D.1997), 567 N.W.2d 351, 356. In *Sawicki*, for example, this court observed that there were "insufficient police resources to meet every need" and that "[p]olice departments must be able to prioritize and create responses without the benefit of hindsight." *Sawicki*, 37 Ohio St.3d at 231, 525 N.E.2d 468.

{¶15} In adopting the public-duty rule, this court was also careful to distinguish it from the defense of sovereign immunity, which this court had abolished as a common-law defense for municipalities and counties in a series of decisions in the 1980s. See, e.g., *Zents v. Summit Cty. Bd. of Commrs.* (1984), 9 Ohio St.3d 204, 9 OBR 516, 459 N.E.2d 881; *Strohofer v. Cincinnati* (1983), 6 Ohio St.3d 118, 6 OBR 178, 451 N.E.2d 787; *Enghauser Mfg. Co. v. Eriksson Eng. Ltd.* (1983), 6 Ohio St.3d 31, 6 OBR 53, 451 N.E.2d 228. Whereas immunity was an absolute defense to liability when applicable, the public-duty rule "comported with the principles of negligence, and was applicable to the determination of the extent to which a statute may encompass the duty upon which negligence is premised." *Sawicki*, 37 Ohio St.3d at 230, 525 N.E.2d 468; see, also, *Williams v. State* (1983), 34 Cal.3d 18, 22-23, 192 Cal.Rptr. 233, 664 P.2d 137. Accordingly, the abrogation of common-law immunity for municipalities did not eliminate the public-duty rule, which "was coexistent at common law with the doctrine of sovereign immunity." *Sawicki*, 37 Ohio St.3d at 230, 525 N.E.2d 468.

{¶16} The *Sawicki* court also recognized an important common-law exception to the public-duty rule. If a "special relationship" existed between the injured party and the public official—such that the latter assumed an affirmative duty to act on behalf of the former—then the public-duty rule would not bar government liability. Id. at paragraph four of the syllabus; see, also, *Cuffy v. New York City* (1987), 69 N.Y.2d 255, 513 N.Y.S.2d 372, 505 N.E.2d 937. "If a special relationship is demonstrated, then a duty is established, and inquiry will continue

8

into the remaining negligence elements." *Sawicki*, 37 Ohio St.3d at 230, 525 N.E.2d 468.

{¶17} Following *Sawicki*, this court extended the public-duty rule beyond the area of local law enforcement to bar governmental liability for alleged negligence in connection with various duties imposed by statute or municipal ordinance. See, e.g., *Delman v. Cleveland Hts.* (1989), 41 Ohio St.3d 1, 534 N.E.2d 835 (point-of-sale housing inspection); *Commerce & Industry Ins. Co. v. Toledo* (1989), 45 Ohio St.3d 96, 543 N.E.2d 1188 (firefighting by municipal fire department); *Williamson v. Pavlovich* (1989), 45 Ohio St.3d 179, 543 N.E.2d 1242 (enforcement of municipal parking ordinance); but, cf., *Brodie v. Summit Cty. Children Serv. Bd.* (1990), 51 Ohio St.3d 112, 118-119, 554 N.E.2d 1301 (finding public-duty rule inapplicable when statute imposed affirmative duty for the specific benefit of children). And in later decisions, this court extended *Sawicki* beyond actions involving local government. In at least two cases decided in the decade following *Sawicki*, this court applied the public-duty rule to foreclose liability in actions against the state in the Court of Claims. See *Hurst v. Ohio Dept. of Rehab. & Corr.* (1995), 72 Ohio St.3d 325, 650 N.E.2d 104 (applying public-duty rule to bar liability for negligently failing to detain parole violator); *Anderson v. Ohio Dept. of Ins.* (1991), 58 Ohio St.3d 215, 569 N.E.2d 1042 (applying public-duty rule to bar liability for negligent liquidation of assets).[4] And even though a handful of states have rejected the public-duty rule as a bar to government liability,[5] a

---

4. This court also analyzed application of the public-duty rule in *Ashland Cty. Bd. of Commrs. v. Ohio Dept. of Taxation* (1992), 63 Ohio St.3d 648, 590 N.E.2d 730, a case in which numerous county boards of commissioners, boards of education, and auditors sought to hold the Tax Commissioner responsible for alleged misfeasance in assessing and apportioning the values of certain property. A close reading of *Ashland*, however, reveals that this court held that the Court of Claims lacked *subject matter jurisdiction*. Id. at 651-653, 690 N.E.2d 730. Thus, the case's subsequent discussion of the public-duty rule was dicta.

5. See, e.g., *Adams v. State* (Alaska 1976), 555 P.2d 235; *Ryan v. State* (1982), 134 Ariz. 308, 656 P.2d 597; *Leake v. Cain* (Colo.1986), 720 P.2d 152; *Commercial Carrier Corp. v. Indian River Cty.*

majority of jurisdictions that have considered the question apply the doctrine in some form.[6]

{¶18} Consistent with this line of cases, the state urges us to affirm the lower courts' application of the public-duty rule in this case.  Because the fire marshal's inspection duties are owed to the public at large and because the appellants have failed to establish a special relationship as defined in *Sawicki*, the

---

(Fla.1979), 371 So.2d 1010; *Fowler v. Roberts* (La.1990), 556 So.2d 1; *Jean W. v. Commonwealth* (1993), 414 Mass. 496, 610 N.E.2d 305; *Maple v. Omaha* (1986), 222 Neb. 293, 384 N.W.2d 254; *Doucette v. Bristol* (1993), 138 N.H. 205, 635 A.2d 1387; *Schear v. Bernalillo Cty. Bd. of Commrs.* (1984), 101 N.M. 671, 687 P.2d 728; *Brennen v. Eugene* (1979), 285 Ore. 401, 591 P.2d 719; *Coffey v. Milwaukee* (1976), 74 Wis.2d 526, 247 N.W.2d 132; *DeWald v. State* (Wyo.1986), 719 P.2d 643.

6. {¶a}  See, e.g., *Williams v. State* (1983), 34 Cal.3d 18, 192 Cal.Rptr. 233, 664 P.2d 137; *Shore v. Stonington* (1982), 187 Conn. 147, 444 A.2d 1379; *Morgan v. Dist. of Columbia* (D.C.App.1983), 468 A.2d 1306; *Ruf v. Honolulu Police Dept.* (1999), 89 Haw. 315, 972 P.2d 1081; *Kolbe v. State* (Iowa 2001), 625 N.W.2d 721; *Fudge v. Kansas City*, 239 Kan. 369, 720 P.2d 1093; *Cracraft v. St. Louis Park* (Minn.1979), 279 N.W.2d 801; *State ex rel. Barthelette v. Sanders* (Mo.1988), 756 S.W.2d 536; *Coty v. Washoe Cty.* (1992), 108 Nev. 757, 839 P.2d 97; *Cuffy v. New York City*, 69 N.Y.2d 255, 513 N.Y.Supp.2d 372, 505 N.E.2d 937; *Catone v. Medberry* (R.I.1989), 555 A.2d 328; *Steinke v. South Carolina Dept. of Labor* (1999), 336 S.C. 373, 520 S.E.2d 142; *Tipton v. Tabor* (S.D.1997), 567 N.W.2d 351; *Rollins v. Petersen* (Utah 1991), 813 P.2d 1156; *Chambers-Castanes v. King Cty.* (1983), 100 Wash.2d 275, 669 P.2d 451; *Benson v. Kutsch* (1989), 181 W.Va. 1, 380 S.E.2d 36.

{¶b}  Five other states—Georgia, Indiana, Michigan, North Carolina, and Vermont—have applied the public-duty rule in a more limited fashion.  The supreme courts in Georgia and Indiana have expressly declined to apply the public-duty rule beyond the context of police and emergency services.  See *Dept. of Transp. v. Brown* (1996), 267 Ga. 6, 8-9, 471 S.E.2d 849 (limiting *Rome v. Jordan* [1993], 263 Ga. 26, 426 S.E.2d 861); *Benton v. Oakland City* (Ind.1999), 721 N.E.2d 224, 232-234 (limiting *Mullin v. S. Bend* [Ind.1994], 639 N.E.2d 278).  Similarly, the Michigan Supreme Court recently refused to extend the public-duty rule beyond cases involving the alleged failure of a police officer to protect a plaintiff from a third person's criminal acts.  *Beaudrie v. Henderson* (2001), 465 Mich. 124, 134-142, 631 N.W.2d 308 (limiting *White v. Beasley* [1996], 453 Mich. 308, 552 N.W.2d 1).  The North Carolina Supreme Court has embraced the public-duty rule in suits against the *state* but has declined to extend it to suits against *municipalities*.  Compare *Stone v. North Carolina Dept. of Labor*, 347 N.C. at 477-479, 495 S.E.2d 711 (applying public-duty rule to bar claim against the state arising out of negligent failure to conduct fire safety inspection), with *Thompson v. Waters* (2000), 351 N.C. 462, 464-465, 526 S.E.2d 650 (declining to extend public-duty rule to insulate county from liability for negligent building inspection).  The Vermont Supreme Court has apparently drawn the same distinction as North Carolina.  Compare *Sorge v. State* (2000), 171 Vt. 171, 762 A.2d 816, 819-820 (applying public-duty rule and special-relationship exception to an action against the state alleging negligent supervision of juvenile in custody), with *Hudson v. E. Montpelier* (1993), 161 Vt. 168, 179, 638 A.2d 561 (expressly declining to adopt the public-duty rule in an action alleging negligence by municipal employees).

state argues that the public-duty rule is as applicable in this context as it was in the cases in which we have previously applied it.  In addition to the state's arguments for affirmance, we are also cognizant of cases from other jurisdictions that have applied the public-duty rule to bar government liability for an allegedly negligent fire inspection—the gravamen of the appellants' claim in this case.  See, e.g., *Stone*, 347 N.C. at 480-482, 495 S.E.2d 711; *Cracraft v. St. Louis Park* (Minn.1979), 279 N.W.2d 801, 805-807.  Despite all of these factors militating in favor of continued application of the public-duty rule to suits against the state, we cannot adhere to the doctrine without first determining whether it has a place within the statutory scheme created by the legislature in R.C. Chapter 2743.

III

**{¶19}** Although this court has applied the public-duty rule to suits against the state in the Court of Claims, this court has not specifically analyzed whether application of the doctrine is compatible with the express language contained in R.C. Chapter 2743.  Of specific importance is R.C. 2743.02(A)(1), which states:

**{¶20}** "The state hereby waives its immunity from liability and consents to be sued, and have its liability determined, in the court of claims created in this chapter in accordance with *the same rules of law applicable to suits between private parties*, except that the determination of liability is subject to the limitations set forth in this chapter * * *."  (Emphasis added.)

**{¶21}** The parties do not dispute that R.C. Chapter 2743 does not "set forth" the public-duty rule as a limitation to the state's liability for tortious conduct.  The viability of the doctrine in suits against the state therefore depends on whether we can fairly characterize the public-duty rule as a rule of law "applicable to suits between private parties."  More specifically, we must decide whether the public-duty rule is compatible with the legal rules governing ordinary negligence suits involving private parties in the common pleas courts.  We agree with the appellants that it is not.

**{¶22}** The appellants in this case seek to hold the fire marshal responsible for damages on a negligent-inspection theory of liability. It is well settled that the elements of an ordinary negligence suit between private parties are (1) the existence of a legal duty, (2) the defendant's breach of that duty, and (3) injury "resulting proximately therefrom." *Mussivand v. David* (1989), 45 Ohio St.3d 314, 318, 544 N.E.2d 265. The duty element of negligence, with which courts have linked the public-duty rule, is a question of law for the court to determine. Id.

**{¶23}** "Duty, as used in Ohio tort law, refers to the relationship between the plaintiff and the defendant from which arises an obligation on the part of the defendant to exercise due care toward the plaintiff." *Commerce & Industry Ins. Co.*, 45 Ohio St.3d at 98, 543 N.E.2d 1188; see, also, *Huston v. Konieczny* (1990), 52 Ohio St.3d 214, 217, 556 N.E.2d 505. This court has often stated that the existence of a duty depends upon the foreseeability of harm: if a reasonably prudent person would have anticipated that an injury was likely to result from a particular act, the court could find that the duty element of negligence is satisfied. *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.* (1998), 81 Ohio St.3d 677, 680, 693 N.E.2d 271; *Commerce & Industry*, 45 Ohio St.3d at 98, 543 N.E.2d 1188; *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 77, 15 OBR 179, 472 N.E.2d 707. In addition, we have also stated that the duty element of negligence may be established by common law, by legislative enactment, or by the particular circumstances of a given case. *Chambers v. St. Mary's School* (1998), 82 Ohio St.3d 563, 565, 697 N.E.2d 198; *Eisenhuth v. Moneyhon* (1954), 161 Ohio St. 367, 53 O.O. 274, 119 N.E.2d 440, paragraph one of the syllabus. Admittedly, however, the concept of duty in negligence law is at times an elusive one. As this court explained in *Mussivand*:

**{¶24}** "There is no formula for ascertaining whether a duty exists. Duty '* * * is the court's "expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection."

(Prosser, Law of Torts (4th ed.1971) pp. 325-326.) Any number of considerations may justify the imposition of duty in particular circumstances, including the guidance of history, our continually refined concepts of morals and justice, the convenience of the rule, and social judgment as to where the loss should fall. (Prosser, *Palsgraf Revisited* (1953), 52 Mich.L.Rev. 1, 15).' " Id., 45 Ohio St.3d at 318, 544 N.E.2d 265, quoting *Weirum v. RKO Gen., Inc.* (1975), 15 Cal.3d 40, 46, 123 Cal.Rptr. 468, 539 P.2d 36. See, generally, *Palsgraf v. Long Island RR. Co.* (1928), 248 N.Y. 339, 162 N.E. 99.

{¶25} In light of *Mussivand*'s explanation of the duty element, there is a substantial argument that the public-duty rule is merely an expression of policy that leads us to conclude that private interests are not generally entitled to protection against conduct by public officials performing public duties. See *Shore v. Stonington* (1982), 187 Conn. 147, 152, 444 A.2d 1379. And were we deciding this case in the same context in which we decided *Sawicki*—in an immunity vacuum and applying purely common-law principles—we might be more willing to decide that the public-duty rule "comport[s] with the principles of negligence" by aiding the court in a determination of whether a duty imposed upon a public employee "may encompass the duty upon which negligence is premised." *Sawicki*, 37 Ohio St.3d at 230, 525 N.E.2d 468. But unlike in *Sawicki*, our analysis of common-law negligence principles here is tempered by statutory dictates.

{¶26} To accept the state's contention that the public-duty rule is applicable here because it "determines whether a defendant has any duty to begin with" ignores a vital feature of the doctrine that is incompatible with R.C. 2743.02(A)(1). The applicability of the public-duty rule depends upon the public status of the particular defendant raising it as a bar to liability. In other words, only *governmental* entities and their employees may rely on the rule. It is spurious logic to conclude that a doctrine that is, by definition, available only to *public* defendants can be consistent with a statute mandating that suits be determined in accordance

with rules of law applicable to *private* parties. See *Leake v. Cain* (Colo.1986), 720 P.2d 152, 159-160 (holding that the public-duty rule contravened Colorado statute providing that "liability of the public entity shall be determined in the same manner as if the public entity were a private person," Colo.Rev.Stat. 24-10-107); *Brennen v. Eugene* (1979), 285 Ore. 401, 411, 591 P.2d 719 ("any distinction between 'public' and 'private' duty is precluded by statute in this state"). The limitation on liability occasioned by the public-duty rule subjects a plaintiff suing in the Court of Claims to a heightened burden of establishing the duty element of negligence that would not exist if that same plaintiff were suing a private defendant in common pleas court. See *Adams v. State* (Alaska 1976), 555 P.2d 235, 242. Given the unambiguous directive of R.C. 2743.02(A), there is no legal or logical basis to conclude that the public-duty rule, which is by definition unavailable to private litigants, can apply to suits against the state in the Court of Claims.[7]

**{¶27}** In coming to this conclusion, we acknowledge the contrary interpretation of R.C. 2743.02(A)(1) expressed over twenty-five years ago in *Shelton v. Indus. Comm.* (1976), 51 Ohio App.2d 125, 5 O.O.3d 286, 367 N.E.2d 51. In *Shelton*, also a case alleging an injury resulting from a negligent safety inspection, the court of appeals opted for a narrower interpretation of the language

---

7. Justice Lundberg Stratton's dissenting opinion surmises that our holding, which depends upon the statutory language of R.C. 2743.02(A), could lead to the "unintended consequenc[e]" of invalidating Civ.R. 62(C), which permits the state to obtain a stay of a judgment without the necessity of providing a bond. This contention is remarkable, for our holding cannot lead to any such result. It is one thing to say, as we do today, that a *common-law* rule is incompatible with statutory language setting forth the general public policy of Ohio in the area of suits in the Court of Claims. It is quite another thing to contend that *duly enacted* rules or statutes would be equally invalidated. See, e.g., *Rockey v. 84 Lumber Co.* (1993), 66 Ohio St.3d 221, 611 N.E.2d 789, paragraph two of the syllabus ("The Ohio Rules of Civil Procedure, which were promulgated by the Supreme Court pursuant to Section 5[B], Article IV of the Ohio Constitution, must control over subsequently enacted inconsistent statutes purporting to govern procedural matters"); R.C. 1.51 (announcing general rule of construction that specific provision controls over a general one when provisions are in irreconcilable conflict).

providing for state liability in accordance with the same rules of law applicable to suits between private parties:

**{¶28}** "Construing that provision more narrowly, one could say that a private party's duty to inspect and to enforce safety standards is not created by statute, but only by virtue of some other legal relationship and, hence, there is no rule of law making a private party liable for a failure to perform statutory duties of inspection and enforcement of safety standards which were enacted to protect the health, safety, and welfare of all of the citizens of Ohio." Id. at 130, 5 O.O.3d 286, 367 N.E.2d 51.

**{¶29}** Using this reasoning, the court of appeals held that an action could not lie against the Industrial Commission when the breach of duty giving rise to governmental liability arose only by statute. Other courts have used a similar mode of analysis to reconcile the public-duty rule with statutory waivers of sovereign immunity worded similarly to R.C. 2743.02(A)(1). See, e.g., *Stone*, 347 N.C. at 478-479, 495 S.E.2d 711. At first glance, the *Shelton* line of reasoning may carry with it some superficial appeal as a way to reconcile R.C. 2743.02(A)(1) with the public-duty rule. We reject this attempted reconciliation, however, because accepting it would run contrary to other areas of Ohio tort law.[8]

**{¶30}** *Shelton*'s reasoning operates on the unstated premise that statutes creating duties for governmental actors cannot satisfy the duty element for purposes of the state's liability for negligence because there are no statutory duties that may similarly bind private parties. Cases from this court, however, suggest otherwise.

---

8. Justice Lundberg Stratton's dissent points to legislative silence following *Shelton* as purported evidence of the General Assembly's endorsement of the court of appeals' interpretation of R.C. 2743.02(A). A legislature does not, however, express its will by *failing* to legislate. " 'The act of refusing to enact a law *** has utterly no legal effect, and thus has utterly no place in a serious discussion of the law.' " *Rice v. CertainTeed Corp.* (1999), 84 Ohio St.3d 417, 421, 704 N.E.2d 1217, quoting *United States v. Estate of Romani* (1998), 523 U.S. 517, 535, 118 S.Ct. 1478, 140 L.Ed.2d 710 (Scalia, J., concurring in part and concurring in judgment).

We have expressly stated that a duty, for purposes of a negligence claim, may arise out of a legislative enactment. *Chambers*, 82 Ohio St.3d at 565, 697 N.E.2d 198; see, also, *Gelbman v. Second Natl. Bank of Warren* (1984), 9 Ohio St.3d 77, 79, 9 OBR 280, 458 N.E.2d 1262. And this court has cited statutory law as a means of addressing whether the duty element was satisfied in negligence suits against private parties. See, e.g., *Mussivand*, 45 Ohio St.3d at 320, 544 N.E.2d 265; *Shroades v. Rental Homes* (1981), 68 Ohio St.2d 20, 22 O.O.3d 152, 427 N.E.2d 774. Thus, as a general matter, government actors are not alone in having duties imposed upon them by statute. The fact that a statute may impose a duty to act, even if a private person would not have such a duty, "does no more than identify the source of the duty." *Jean W. v. Commonwealth* (1993), 414 Mass. 496, 508, 610 N.E.2d 305 (Liacos, C.J., concurring); see, also, *Beaudrie v. Henderson* (2001), 465 Mich. 124, 140, 631 N.W.2d 308.

**{¶31}** Accordingly, we hold that the public-duty rule is incompatible with R.C. 2743.02(A)(1)'s express language requiring that the state's liability in the Court of Claims be determined "in accordance with the same rules of law applicable to suits between private parties." In negligence suits against the state, the Court of Claims must determine the existence of a legal duty using conventional tort principles that would be applicable if the defendant were a private individual or entity. This court's decisions applying the public-duty rule in actions brought in the Court of Claims are necessarily overruled to the extent inconsistent with our decision today.[9]

---

9. *Baum v. Ohio State Hwy. Patrol* (1995), 72 Ohio St.3d 469, 650 N.E.2d 1347, is not one of the cases that we overrule today. It is true that *Baum*, which precluded liability for negligence arising out of a state trooper's operation of his vehicle while responding to an emergency call, cited *Sawicki* for the proposition that "liability under R.C. Chapter 2743 cannot be imposed since the action did not result from the breach owed to the particular plaintiff." Id. at 471-472, 650 N.E.2d 1347. *Baum* did not, however, involve the public-duty rule. *Baum* held that the state was *immune* from liability unless a state trooper committed willful or wanton misconduct while operating his or her vehicle in response to an emergency call. Id. at syllabus. If *Baum* had truly hinged on the public-duty rule,

IV

**{¶32}** In declaring the public-duty rule inapplicable to suits against the state in the Court of Claims, we are mindful of the various public policies that courts have used to justify application of the rule. Indeed, the public policies that this court cited in *Sawicki*—the integrity of the public fisc and the need to avoid judicial intervention into policy decisions—are as significant now as they were when *Sawicki* was decided. For several reasons, however, the policy rationales that have supported application of the public-duty rule are not as compelling when applied to suits against the state in the Court of Claims.

**{¶33}** First, no matter what considerations of policy support the *judicial* application of the public-duty rule, we must remember that R.C. Chapter 2743 has *legislatively* set forth the public policy of this state. That policy, expressed in R.C. 2743.02(A)(1), is to allow suits against the state according to the same rules as between private parties, "except that the determination of liability is subject to the *limitations set forth in this chapter*." (Emphasis added.) As we have stated previously, the public-duty rule is neither "set forth" in R.C. Chapter 2743 nor a rule of law applicable to suits between private parties. It is inappropriate for the court to engraft the public-duty rule as an additional limitation on liability that the General Assembly has not provided. If the public-duty rule is to become a rule of substantive law applicable to suits in the Court of Claims, it is the General Assembly—the ultimate arbiter of public policy—that should make it so by way of legislation.[10] It is not this court's role to apply a judicially created doctrine when faced with statutory language that cuts *against* its applicability.

---

there would have been no need for us to address whether the state was entitled to an immunity defense. See *Sawicki*, 37 Ohio St.3d at 230, 525 N.E.2d 468.

10. See, e.g., *Wilson v. Anchorage* (Alaska 1983), 669 P.2d 569, 571 (noting that the Alaska legislature immunized public entities from liability based on negligent safety inspections of private property following *Adams*, 555 P.2d 235, in which the Alaska Supreme Court refused to recognize the public-duty rule); *Clouse v. State* (2001), 199 Ariz. 196, 199, 16 P.3d 757 (noting that Arizona legislature reinstated immunity for variety of public functions following abrogation of the public-

**{¶34}** Second, there are already important safeguards in our jurisprudence that satisfy the public-policy concerns addressed by the public-duty rule. In *Reynolds v. State* (1984), 14 Ohio St.3d 68, 14 OBR 506, 471 N.E.2d 776, a case in which this court squarely addressed the meaning of R.C. 2743.02(A)(1), this court acknowledged that the state's potential liability under R.C. Chapter 2743 is not unbounded. Analogizing to its earlier holdings concerning the limitations on the abrogation of municipal immunity, this court rejected the notion that the General Assembly's abrogation of sovereign immunity in R.C. 2743.02 extended to essential acts of governmental decisionmaking. Id. at 70, 471 N.E.2d 776; see, also, *Enghauser Mfg. Co.*, 6 Ohio St.3d at 35, 6 OBR 53, 451 N.E.2d 228. Accordingly, this court held:

**{¶35}** "The language in R.C. 2743.02 that 'the state' shall 'have its liability determined * * * in accordance with the same rules of law applicable to suits between private parties * * *' means that the state cannot be sued for its legislative or judicial functions or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion. However, once the decision has been made to engage in a certain activity or function, the state may be held liable, in the same manner as private parties, for the negligence of the actions of its employees and agents in the performance of [that activity or function]." *Reynolds* at paragraph one of the syllabus; accord *Garland v. Ohio Dept. of Transp.* (1990), 48 Ohio St.3d 10, 11, 548 N.E.2d 233.

---

duty rule in *Ryan v. State* [1982], 134 Ariz. 308, 656 P.2d 597); *Persilver v. Louisiana Dept. of Transp.* (La.App.1991), 592 So.2d 1344, 1347, fn. 2 (noting that Louisiana statute providing immunity for discretionary acts supersedes Louisiana Supreme Court's rejection of public-duty rule in *Fowler*, 556 So.2d 1); Barry, *Brum v. Town of Dartmouth* and the Public Duty Rule: Navigating an Interpretive Quagmire (2000), 41 B.C. L. Rev. 383, 410-413 (chronicling the Massachusetts legislature's reinstatement of some aspects of the public-duty rule following judicial abrogation of the doctrine in *Jean W.*, 414 Mass. 496, 610 N.E.2d 305).

{¶36} The law as set forth in *Reynolds*, which we today reaffirm, addresses public-policy concerns identical to those that courts have used to justify the public-duty rule. That the state already enjoys some measure of qualified immunity for discretionary functions cuts against recognition of an additional rule insulating public entities from liability merely because of their public status. See *Ryan v. State* (1982), 134 Ariz. 308, 310, 656 P.2d 597 (holding that Arizona's statutory immunity for discretionary acts "should allay these fears" that "people will be afraid to act in official capacities" after abrogation of public-duty rule); *Hudson v. E. Montpelier* (1993), 161 Vt. 168, 178-179, 638 A.2d 561 (declining to adopt the public-duty rule as a means of limiting municipal liability when qualified official immunity for discretionary functions already existed). Even without the public-duty rule, the state already enjoys a fair degree of protection from litigious second-guessing of discretionary governmental decisions that necessarily involve difficult choices about how to allocate the state's resources. In this case, for example, *Reynolds* arguably bars liability for the fire marshal's actions if the appellants' harm resulted from a *discretionary* executive decision to forgo a seasonal inspection; if, on the other hand, the fire marshal's negligent *performance* of an inspection was the proximate cause of the appellants' harm, R.C. 2743.02(A)(1) allows for liability against the state.[11]

{¶37} Third, and perhaps most significant, our rejection of the public-duty rule's application to suits in the Court of Claims does not automatically open the floodgates to excessive governmental liability. For one thing, the absence of the public-duty rule will not automatically result in new duties—and thereby new

---

11. Thus, Justice Resnick's dissent grossly mischaracterizes (or misunderstands) our holding by insisting that our decision subjects the fire marshal to liability for "deciding to postpone a cursory, discretionary, and seasonal inspection." Infra at ¶52 (Resnick, J., dissenting). If the dissent's contention were true, it would amount to an implicit overruling of *Reynolds*. Our reaffirmation today of the *Reynolds* syllabus—namely, the recognition that the state cannot be held liable for highly discretionary decisions—refutes any such claim.

causes of action—that could impose tort liability on the state. This court has previously stated that "R.C. 2743.02(A) does not create a new right of action against the state, but places the state upon the same level as any private party." *McCord v. Ohio Div. of Parks & Recreation* (1978), 54 Ohio St.2d 72, 74, 8 O.O.3d 77, 375 N.E.2d 50. Thus, suits against the state are inherently limited by the type of action asserted against it; if the cause of action is not cognizable as between private parties, then there can likewise be no state liability. For instance, actions (unlike this case) that do *not* sound in tort but seek recovery purely for a statutory violation will not necessarily lie against the state—particularly if the statute in question provides no private right of action. Cf. *Smith v. Wait* (1975), 46 Ohio App.2d 281, 283-286, 75 O.O.2d 560, 350 N.E.2d 431 (finding no state liability in an action alleging violations of statutory provisions concerning registration of securities).

{¶38} For another thing, conventional negligence principles already provide some measure of protection against the possibility of the state's becoming the de facto guarantor of every injury somehow attributable to the actions of a state tortfeasor. A state defendant, just like any private defendant, remains protected by traditional tort concepts of duty, including foreseeability and pertinent public-policy considerations. *Leake v. Cain*, 720 P.2d at 160; *Chambers-Castanes v. King Cty.* (1983), 100 Wash.2d 275, 292, 669 P.2d 451 (Utter, J., concurring in the result). Moreover, our tort law already requires a special relationship in order to satisfy the duty element in certain types of negligence actions, such as actions based on failure to act or failure to control the conduct of a third person. See *Littleton v. Good Samaritan Hosp. & Health Ctr.* (1988), 39 Ohio St.3d 86, 92, 529 N.E.2d 449; *Hill v. Sonitrol of Southwestern Ohio, Inc.* (1988), 36 Ohio St.3d 36, 39, 521 N.E.2d 780; see, also, 2 Restatement of the Law 2d, Torts (1965) 116-122, Sections

314-315.[12] Thus, when a duty is neither imposed by statute nor undertaken by an instrumentality of the state, the state defendant is already insulated from liability based on a failure to act. See, e.g., *Juliano v.Ohio Dept. of Health* (1985), 18 Ohio St.3d 303, 304, 18 OBR 350, 480 N.E.2d 817 (finding no liability for failure to inspect diving board when statute imposed no such duty); cf. *Lopatkovich v. Tiffin* (1986), 28 Ohio St.3d 204, 207, 28 OBR 290, 503 N.E.2d 154 (snow removal ordinance was at most a "duty to assist the city," did not "raise a duty on owners and occupiers to the public at large," and therefore could not form basis for negligence liability). A plaintiff must also shoulder the burden of establishing proximate cause, which could be exceedingly difficult in cases where the governmental conduct alleged to have caused injury is particularly attenuated or exacerbated by intervening circumstances. "Especially in instances where the public employee's purported negligence stems from a failure to prevent or to mitigate a harmful situation that he did not cause, a plaintiff's burden of establishing proximate cause will be significant." *Jean W. v. Commonwealth*, 414 Mass. at 511-512, 610 N.E.2d 305 (Liacos, C.J., concurring); see, also, *Brennen*, 285 Ore. at 408, 591 P.2d 719 ("the requirement that the risk created by the activity of the municipal agent fall with the 'zone of foreseeability' imposes an additional limitation on the scope of governmental liability").

{¶39} For all of these reasons, the public-policy rationales that supported our adoption of the public-duty rule in *Sawicki* do not carry the same force when analyzing whether the doctrine should apply to suits against the state in the Court of Claims. Given the legislature's expression of public policy in the text of R.C. 2743.02(A)(1) and the built-in safeguards against excessive governmental liability

---

12. Our recognition that this principle applies to both state and private defendants renders puzzling the dissent's claim that today's decision somehow imposes an affirmative duty to act upon state defendants that would not exist for private defendants. See infra at ¶90-93, 95-98, 104-106 (Resnick, J., dissenting). We have said quite the opposite.

already in place, we find no reason to continue *Sawicki*'s extension to suits brought under R.C. Chapter 2743.[13]

V

**{¶40}** For the foregoing reasons, we reject the public-duty rule as a bar to the state's liability for negligence in actions brought in the Court of Claims. Because we hold that the public-duty rule is inconsistent with the statutory language of R.C. 2743.02(A)(1), we need not reach the appellants' arguments challenging the constitutionality of the doctrine. See *State ex rel. DeBrosse v. Cool* (1999), 87 Ohio St.3d 1, 7, 716 N.E.2d 1114 ("Courts decide constitutional issues only when absolutely necessary"). We also decline to address two other issues raised by the parties on this appeal: (1) the appellants' proposition concerning the proper foreseeability standard in assessing issues regarding proximate causation and (2) the state's alternate argument for affirmance based on the fire marshal's discretionary-function immunity. Because the court of appeals held that the public-duty rule barred the appellants' claims, it had no occasion to reach these issues; accordingly, we will leave those issues for the court of appeals to resolve, if necessary, on remand.

**{¶41}** The judgment of the court of appeals is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

Judgment reversed

and cause remanded.

DOUGLAS, F.E. SWEENEY and PFEIFER, JJ., concur.

DOUGLAS, J., concurs separately.

---

13. Insofar as *Sawicki* dealt only with municipal liability, we have no occasion to overrule it or any of our decisions applying the public-duty rule to actions *not* brought under R.C. Chapter 2743. Various courts of appeals, however, have considered *Sawicki* (among other cases) to have been legislatively superseded by the General Assembly's enactment of R.C. Chapter 2744. See, e.g., *Sudnik v. Crimi* (1997), 117 Ohio App.3d 394, 397, 690 N.E.2d 925; *Franklin v. Columbus* (1998), 130 Ohio App.3d 53, 59-60, 719 N.E.2d 592; *Amborski v. Toledo* (1990), 67 Ohio App.3d 47, 51, 585 N.E.2d 974.

MOYER, C.J., RESNICK and LUNDBERG STRATTON, JJ., dissent.

LUNDBERG STRATTON, J., dissents.

———————————

**DOUGLAS, J., concurring.**

**{¶42}** Justice Cook has, with surgical skill, dissected the so-called public-duty rule and, in the process, has shown why the rule has no efficacy or relevance in Ohio.  The intellectual honesty of the opinion, drawing its conclusions from the facts as opposed to trying to make the law and facts fit preconceived notions, makes it difficult for the dissenters to mount a credible argument in opposition to the majority opinion.  Perhaps that is why both dissents carry on, page after page, citing fact patterns and cases that have no relevance to the case at bar.

**{¶43}** Justice Cook has, for all to see and understand, explained the clear differences between the doctrine of sovereign immunity as it applies to the state on the one hand, and to municipalities on the other.  Yet even though the case now before us involves the state, both dissents continue to confuse the concepts by citing and relying on the inapplicable *Sawicki v. Ottawa Hills* (1988), 37 Ohio St.3d 222, 525 N.E.2d 468—a case arising out of municipal tort liability.  The failure to grasp this basic distinction is why we now find the law of Ohio to be confused in its application in these types of cases.

**{¶44}** It would be an easy task to respond to the dissents point by point, but since they both start with a faulty premise and go downhill from there, not much would be gained by doing so.  Just one statement from each should suffice.

**{¶45}** Justice Resnick, in discussing the doctrine of sovereign immunity, states that "it functions to exempt government from the usual liability that flows from the breach of an established duty of care."  Well, yes, that is exactly what it does.  Justice Resnick says that that is OK.  Many of us now say that it is not OK.  How one justifies that a governmental entity can injure one of its citizens without

23

liability but if the same injury is caused by a fellow citizen liability attaches escapes many of us and lies at the heart of our disagreement.

{¶46} Justice Stratton says about the majority opinion that "[t]he reasoning is so internally inconsistent that I find it difficult to even argue against." Now that is strange. A proposition that is so internally inconsistent should be an easy mark. It could be, of course, that the lack of any real law contrary to the majority opinion is the reason it is difficult to argue against.

{¶47} But it is not the issue of whether they are wrong and we are right or vice versa that determines the outcome. The outcome is determined by the law of this state and the framers of our Constitution and makers of our statutes. It should not escape interested readers that both dissents, by necessity and convenience, ignore the real law in the case—Section 16, Article I of the Ohio Constitution. In a separate sentence, which seems to have no particular relevance to the other sentence of the section, the framers provided that "[s]uits may be brought against the state, in such courts and in such manner, as may be provided by law." No limitations, other than place and manner, are set forth. No sovereign immunity exception. No public-duty exception. Nothing but simple language—the state may be sued.

{¶48} Given the constitutional language, nothing more was needed. But maybe just to be sure, the General Assembly enacted R.C. 2743.02(A)(1), which provides that "[t]he state hereby waives its immunity from liability and consents to be sued, and have its liability determined * * * in accordance with the same rules of law applicable to suits between private parties * * *." Justice Cook has now explained what all of that means. The dissenters have ignored the constitutional language.

{¶49} Notwithstanding the constitutional language, the dissenters say that there are limitations on the state's liability and that those limitations come dressed up as the "public-duty rule." If this premise is accepted, then it must logically

24

follow that without a corresponding amendment to the Constitution, the General Assembly could provide that no suit could be brought against the state. This obviously is not and could not be the law.

{¶50} Justice Cook has done the law a great service. The opinion deserves to be supported, not denigrated. I respectfully concur.

_____

**ALICE ROBIE RESNICK, J., dissenting.**

{¶51} I am hardly one who concedes infallibility to legal precedent, however long or recently established. See, e.g., *Wright v. Bloom* (1994), 69 Ohio St.3d 596, 635 N.E.2d 31 (overruling paragraph two of the syllabus of *In re Estate of Thompson* [1981], 66 Ohio St.2d 433, 20 O.O.3d 371, 423 N.E.2d 90); *Clark v. Southview Hosp. & Family Health Ctr.* (1994), 68 Ohio St.3d 435, 438, 628 N.E.2d 46 (overruling paragraph four of the syllabus of *Albain v. Flower Hosp.* [1990], 50 Ohio St.3d 251, 553 N.E.2d 1038). Nor am I inclined to view preexisting conceptions of duty as immutable or sacrosanct. See *Estates of Morgan v. Fairfield Family Counseling Ctr.* (1997), 77 Ohio St.3d 284, 297-298, 673 N.E.2d 1311. But if our decisions are to afford any stability or certainty to the law, then the principles they embrace—those founded on sound reason and well suited to the interest of justice—should not be discarded at will.

{¶52} Today's majority, relying primarily on a statute that is irrelevant to the matter at hand, suddenly abolishes a long-established, well-respected, and prevalent legal doctrine in a case that demonstrates, better than most others, the necessity of its retention. By abandoning the so-called public-duty rule in claims against the state, the majority subjects the fire marshal to liability for deciding to postpone a cursory, discretionary, and seasonal inspection at the Ohio River Fireworks store in order to conduct a "buy bust" to expose that facility's illegal sale of more dangerous Class B fireworks to unauthorized purchasers. By the same token, the majority's decision would apply to subject the fire marshal to liability

had he decided to conduct the inspection rather than the buy bust and members of the public were subsequently harmed or killed by Class B fireworks in the hands of an unauthorized purchaser. It is exactly this kind of judicial interference with governmental decision-making and deployment of community resources that marks the public-duty doctrine as a cogent, viable, and compelling feature of the common law. For these and the following reasons, I must respectfully, but strenuously, dissent.

{¶53} The ascendancy of the public-duty doctrine in this country, and its concomitant "special-relationship exception," is often attributed to the United States Supreme Court's decision in *South v. Maryland* (1855), 59 U.S. (18 How.) 396, 15 L.Ed. 433. In that case, the plaintiff was abducted, held for several days, and released only when he obtained the ransom demanded by his kidnappers. According to the plaintiff, the local sheriff knew he had been kidnapped and where he was detained, yet did nothing to secure his release or arrest the kidnappers. The plaintiff sued the sheriff on his official bond, claiming that "the sheriff did not well and truly execute and perform the duties required of him by the laws" of the state of Maryland. Id. at 401, 18 How. 396, 15 L.Ed. 433.

{¶54} The plaintiff received a judgment against the sheriff in the circuit court, but the Supreme Court reversed the award. In so doing, the high court held, "It is an undisputed principle of the common law, that for a breach of a public duty, an officer * * * is amenable to the public, and punishable by indictment only." Id. at 402-403, 18 How. 396, 15 L.Ed. 433. The court noted, however, that an exception may lie where there exists a "special individual right, privilege, or franchise in the plaintiff, from the enjoyment of which he has been restrained or hindered by the malicious act of the sheriff." Id. at 403, 18 How. 396, 15 L.Ed. 433.

{¶55} A substantial majority of jurisdictions now adhere to the principle that the duties of public officers and employees ordinarily are owed exclusively to

26

the body politic with whom they contracted, and are enforceable only administratively or by criminal proceedings. Those duties are not owed to individuals who may be affected by their breach but on whose behalf the employees have not assumed to act. Accordingly, state or local governmental bodies cannot be held liable at common law for the breach of a duty owed generally to the public as such, but can be held liable for the breach of a duty owed specially to individual members of the public. Correlatively, a governmental entity cannot be held liable for negligence in failing to enforce or carry out its public duties under a regulatory or penal statute absent a special relationship between the government and the injured plaintiff or a statutory provision to the contrary.

{¶56} At the heart of the public-duty doctrine lies an assemblage of cogent policy considerations that operate to define the extent to which it is economically and socially feasible to subject governmental units to the loss-distributing function of tort law. These considerations include most prominently the need to preserve the already limited governmental resources that are available to protect the public health, safety, and welfare, the principle that courts should not interfere with or second-guess the policy decisions made by the other branches of government, particularly with regard to the proper allocation of community resources and services, and the likelihood that unlimited exposure to liability would threaten effective governmental functioning for socially desirable ends. Without the doctrine's protection, the government would be confronted with limitless, unpredictable, and, in extreme circumstances, catastrophic liability, which could drain the very resources that are needed in the first instance to promote the public safety and welfare. Aside from damages, governmental entities would incur considerable expenses in defending the lawsuits. Most suits will survive pretrial dismissal or summary judgment motions, since the element of causation, which is almost always a question of fact, will come to replace duty as the determinative issue. In addition, a contrary rule, one whose duty element is satisfied by

foreseeability alone, would invite judicial scrutiny of every action taken, as well as every action that could have been but was not taken, by the other branches of government that has some effect in the public domain. Such a rule would subject the entire panoply of policy and enforcement decisions routinely made by the political branches to judicial oversight every time a particular injured plaintiff finds that its employees failed to properly execute their public duties or ward against harm caused by a third party. Moreover, in the absence of a special duty or relationship, it has always been considered unjust and beyond the function of tort law to impose a duty on any party to act affirmatively to protect another from being harmed by a condition or situation that the party neither created nor exacerbated. There is no legitimate reason for dispensing with this principle merely because the defendant is a governmental body. It is the sum total of these and other considerations of policy that has led the majority of courts to adopt the doctrine's essential general-duty/special-duty dichotomy. See *Shearer v. Gulf Shores* (Ala.1984), 454 So.2d 978; *Williams v. State* (1983), 34 Cal.3d 18, 192 Cal.Rptr. 233, 664 P.2d 137; *Shore v. Stonington* (1982), 187 Conn. 147, 444 A.2d 1379; *Namauu v. Honolulu* (1980), 62 Hawaii 358, 614 P.2d 943; *Ruf v. Honolulu Police Dept.* (1999), 89 Haw. 315, 972 P.2d 1081; *Ransom v. Garden City* (1987), 113 Idaho 202, 743 P.2d 70; *Kolbe v. State* (Iowa 2001), 625 N.W.2d 721; *Robertson v. Topeka* (1982), 231 Kan. 358, 644 P.2d 458; *Ashburn v. Anne Arundel Cty.* (Md.1986), 306 Md. 617, 510 A.2d 1078; *Williams v. Mayor of Baltimore* (2000), 359 Md. 101, 753 A.2d 41; *Cracraft v. St. Louis Park* (Minn.1979), 279 N.W.2d 801; *Hage v. Stade* (Minn.1981), 304 N.W.2d 283; *State ex rel. Barthelette v. Sanders* (Mo.1988), 756 S.W.2d 536; *Jungerman v. Raytown* (Mo.1996), 925 S.W.2d 202; *Phillips v. Billings* (1988), 233 Mont. 249, 758 P.2d 772; *Frye v. Clark Cty.* (1981), 97 Nev. 632, 637 P.2d 1215; *Coty v. Washoe Cty.* (1992), 108 Nev. 757, 839 P.2d 97; *Motyka v. Amsterdam* (1965), 15 N.Y.2d 134, 256 N.Y.S.2d 595, 204 N.E.2d 635; *O'Connor v. New York City* (1983), 58 N.Y.2d 184, 460 N.Y.S.2d

485, 447 N.E.2d 33; *Cuffy v. New York City* (1987), 69 N.Y.2d 255, 513 N.Y.S.2d 372, 505 N.E.2d 937; *Stone v. North Carolina Dept. of Labor* (1998), 347 N.C. 473, 495 S.E.2d 711; *Melendez v. Philadelphia* (1983), 320 Pa.Super. 59, 466 A.2d 1060; *Catone v. Medberry* (R.I.1989), 555 A.2d 328; *Barratt v. Burlingham* (R.I.1985), 492 A.2d 1219; *Orzechowski v. Rhode Island* (R.I.1984), 485 A.2d 545; *Bellamy v. Brown* (1991), 305 S.C. 291, 408 S.E.2d 219; *Steinke v. South Carolina Dept. of Labor, Licensing & Regulation* (1999), 336 S.C. 373, 520 S.E.2d 142; *Washington v. Lexington Cty. Jail* (App.1999), 337 S.C. 400, 523 S.E.2d 204; *Tipton v. Tabor* (S.D.1997), 567 N.W.2d 351; *Ezell v. Cockrell* (Tenn.1995), 902 S.W.2d 394; *Vaquera v. Salas* (Tex.App.1991), 810 S.W.2d 456; *Rollins v. Petersen* (Utah 1991), 813 P.2d 1156; *Sorge v. State* (2000), 171 Vt. 171, 762 A.2d 816; *Chambers-Castanes v. King Cty.* (1983), 100 Wash.2d 275, 669 P.2d 451; *Oberg v. Dept. of Natural Resources* (1990), 114 Wash.2d 278, 787 P.2d 918; *Benson v. Kutsch* (1989), 181 W.Va. 1, 380 S.E.2d 36; *Holsten v. Massey* (1997), 200 W.Va. 775, 490 S.E.2d 864; *Walker v. Meadows* (1999), 206 W.Va. 78, 521 S.E.2d 801; Annotation, Modern Status of Rule Excusing Governmental Unit from Tort Liability on Theory That Only General, Not Particular, Duty Was Owed under Circumstances (1985), 38 A.L.R.4th 1194; 57 American Jurisprudence 2d (2001) 137-145, Municipal, County, School, and State Tort Liability, Sections 102-105.

**{¶57}** According to appellants, however, there is a growing perception that the doctrine "unjustifiably creates inequitable and harsh results for plaintiffs," which has "led an increasing number of states to abandon the public duty doctrine altogether." In support, appellants cite decisions of the high courts of the following ten states: Alaska, Arizona, Colorado, Iowa, Nebraska, New Hampshire, New Mexico, Oregon, Wisconsin, and Wyoming. The majority also discerns that "a handful of states have rejected the public-duty rule as a bar to government liability," listing decisions from the same states with the exception of Iowa and the addition of Florida, Massachusetts, and Louisiana.

**{¶58}** Yet a closer analysis reveals that the public-duty doctrine has not been entirely discarded in all thirteen of these states.  Just last year, the Supreme Court of Iowa clarified that it had never discarded the public-duty rule, while confirming its continued adherence to the rule on public-policy grounds.  *Kolbe,* supra, 625 N.W.2d at 729-730.  Thus, despite appellants' mistaken belief to the contrary, the majority correctly lists Iowa as a jurisdiction that continues to adhere to the public-duty doctrine.

**{¶59}** In *Brennen v. Eugene* (1979), 285 Ore. 401, 591 P.2d 719, the Supreme Court of Oregon did indeed reject the public-duty doctrine, but limited its decision to cases of active governmental misfeasance.  Thus, in distinguishing a number of cases in which the public-duty doctrine was applied to governmental inaction, such as a city's failure to enforce its housing code, the court stated:

**{¶60}** "These cases, which deal with a failure on the part of public officials to act at all, involve considerations quite different from those in a case such as this, where an act is alleged to have been performed and performed negligently.  As a general rule, one is held to a higher standard of care when he affirmatively acts than when he fails to act at all.

**{¶61}** "Because this case is not one of failure to act at all, we express no opinion on the scope of governmental duty in such a case."  (Citation omitted.)  Id. at 409, 591 P.2d 719.  See, also, *Dist. of Columbia v. Forsman* (D.C.App.1990), 580 A.2d 1314, 1317, fn. 5 (noting distinction and rejecting *Brennen* "as authority for appellees' position here," where the district allegedly failed to require an adjacent property owner to obtain a demolition permit prior to commencing work that led to the collapse of plaintiffs' residence).

**{¶62}** In *Jean W. v. Commonwealth* (1993), 414 Mass. 496, 610 N.E.2d 305, the Supreme Judicial Court of Massachusetts rejected the public-duty rule on a four-to-three vote, largely because of the confusing way in which the doctrine had developed and been applied in Massachusetts.  Nevertheless, the court decided not

to abolish the doctrine at that time. Instead, the chief justice's opinion announced the court's intention to abolish the doctrine at the end of the 1993 legislative session so as to give the Massachusetts legislature an opportunity to preempt its decision by passing additional limitations on governmental liability. If not for this maneuver, the case may have been decided differently. Thus, a swing vote in that case commented as follows:

{¶63} "I join in the Chief Justice's opinion principally because the abandonment of the public duty rule is made prospective. * * *

{¶64} "From my point of view, the prospective nature of the opinion recognizes that abandonment of the public duty rule could lead to a deluge of lawsuits against governmental entities, particularly municipalities, which will drain their already limited resources. As I said in *Cyran v. Ware*, 413 Mass. 452, 455 [597 N.E.2d 1352] (1992), for example, '[s]ociety would not favor, and public policy does not support, a rule which would expose a municipality to liability for damages every time its fire department does not, in plaintiff's view, fight a fire satisfactorily. In busy urban areas such exposure could be limitless, and in extreme circumstances (as recent events in Los Angeles illustrate), the potential cost of such governmental liability could be catastrophic.' In addition to damages, governmental entities will incur considerable costs to defend the lawsuits. Most of the suits will probably survive summary judgment (since causation, the issue which will be at the heart of most * * * actions under the new rule, is almost always a question of fact). The costs of defense thus will encompass fees and expenses for discovery, which in present lawsuits is often lengthy and costly, and fees for trial and appeals. The costs could have severe impact on public treasuries. I am not persuaded that the Legislature either intended or anticipated this result when G.L. c. 258 [the Massachusetts Tort Claims Act] was enacted." Id., 414 Mass. at 523-524, 610 N.E.2d 305 (Greaney, J., concurring.)

{¶65} In any event, the Massachusetts legislature responded to the decision in *Jean W.* by codifying many aspects of the public-duty rule, including a provision barring liability for negligent inspections by public employees. See *Gallego v. Wilson* (D.Mass.1995), 882 F.Supp. 1169, 1172; Barry, *Brum v. Town of Dartmouth* and the Public Duty Rule: Navigating an Interpretive Quagmire (2000), 41 B.C.L.Rev. 383, 410-413; Mass. Gen. Laws ch. 258, Section 10(f).

{¶66} The decisions cited by appellants and the majority in support of the rejection of the doctrine in Alaska, Arizona, Colorado, and Louisiana have all been superseded or abrogated by subsequent legislative action in those jurisdictions as well. See *Wilson v. Anchorage* (Alaska 1983), 669 P.2d 569, 571; *Clouse v. State* (2001), 199 Ariz. 196, 199, 16 P.3d 757; *Aztec Minerals Corp. v. Romer* (Colo.App.1996), 940 P.2d 1025, 1031; *Persilver v. Louisiana Dept. of Transp.* (La.App.1991), 592 So.2d 1344, 1347, fn. 2.

{¶67} Finally, even the most ardent and ingenious proponent of the rule's abolition would be hard-pressed to argue that it no longer exists in Florida. As noted by the majority, the Supreme Court of Florida rejected the public-duty rule in *Commercial Carrier Corp. v. Indian River Cty.* (Fla.1979), 371 So.2d 1010, 1015-1016. Nevertheless, the court was impressed by the notion that " 'in any organized society there must be room for basic governmental policy decision and the implementation thereof, unhampered by the threat or fear of sovereign tort liability.' " Id., 371 So.2d at 1019, quoting *Evangelical United Brethren Church v. State* (1965), 67 Wash.2d 246, 254, 407 P.2d 440. Accordingly, the court replaced the public-duty rule with a "discretionary-function exception" to Florida's statutory waiver of sovereign immunity. Rather than utilizing the public-duty/special-duty dichotomy to determine governmental tort liability, the discretionary-function exception "distinguishes between the 'planning' and 'operational' levels of decision-making by governmental agencies." Id., 371 So.2d at 1022.

{¶68} In a series of cases decided on April 4, 1985, the Florida Supreme Court endeavored to clarify the law of governmental tort liability, particularly with regard to the planning/operational dichotomy it created in *Commercial Carrier Corp.* See *Trianon Park Condominium Assn., Inc. v. Hialeah* (Fla.1985), 468 So.2d 912; *Reddish v. Smith* (Fla.1985), 468 So.2d 929; *Everton v. Willard* (Fla.1985), 468 So.2d 936; *Carter v. Stuart* (Fla.1985), 468 So.2d 955; *Duvall v. Cape Coral* (Fla.1985), 468 So.2d 961; *Daytona Beach v. Huhn* (Fla.1985), 468 So.2d 963; *Rodriguez v. Cape Coral* (Fla.1985), 468 So.2d 963.

{¶69} As relevant here, Florida's high court clarified that although governmental entities are not immune from liability for their operational activities, neither are they automatically subject to liability for acts or omissions that occur at the operational level of government. "In order to subject the government to tort liability for operational phase activities, there must first be either an underlying common law or statutory duty of care in the absence of sovereign immunity." *Trianon Park Condominium Assn.*, 468 So.2d at 919.

{¶70} In determining that the city had no underlying duty of care to inspect for building code violations in *Trianon Park*, the court stated: "[T]he enforcement of building codes and ordinances is for the purpose of protecting the health and safety of the public, not the personal or property interests of individual citizens. * * * Statutes and regulations enacted under the police power to protect the public and enhance the public safety do not create duties owed by the government to citizens as individuals without the specific legislative intent to do so." Id., 468 So.2d at 922.

{¶71} In determining that a deputy sheriff had no underlying duty of care to arrest a drunk driver in *Everton*, the court explained:

{¶72} "We recognize that, if a special relationship exists between an individual and a governmental entity, there could be a duty of care owed to the individual. * * * In such a case, a special duty to use reasonable care in the

33

protection of the individual may arise. See, *e.g., Schuster v. City of New York*, 5 N.Y.2d 75, 154 N.E.2d 534, 180 N.Y.S.2d 265 (1958).

{¶73} "A law enforcement officer's duty to protect the citizens is a general duty owed to the public as a whole. The victim of a criminal offense, which might have been prevented through reasonable law enforcement action, does not establish a common law duty of care to the individual citizen and resulting tort liability, absent a special duty to the victim. This majority view was expressed by the United States Supreme Court in its early decision in *South v. Maryland*, 59 U.S. (18 How.) 396, 15 L.Ed. 433 (1855)." Id., 468 So.2d at 938.

{¶74} Thus, as one Florida Supreme Court justice stated, "Today the majority embraces the very analysis explicitly quashed in *Commercial Carrier*." *Trianon Park Condominium Assn.*, 468 So.2d at 924 (Ehrlich, J., dissenting). And as observed by another, "Careful readers will recognize, absent the labeling, the substance of the [public duty] doctrine." Id., 468 So.2d at 926 (Shaw, J., dissenting).

{¶75} It would therefore appear that the number of states willing to discard all vestiges of the public-duty rule has not increased to 12 or 13, but has actually dwindled to about 4 or 5 at the most.

{¶76} Moreover, the argument that the public-duty rule should be abandoned because of the hardship it causes to plaintiffs has "been raised before and rejected. It is true that some individuals will suffer substantial hardship as a result of their inability to recover for their injuries from a municipality that negligently fails to enforce its own regulations. The deleterious impact that such a judicial extension of liability would have on local governments, the vital functions that they serve, and ultimately on taxpayers, however, demands continued adherence to the existing rule. All the more is this so when there has been reliance for decades on this doctrine for purposes of municipal fiscal planning. If liability to individuals is to be imposed on municipalities for failure to enforce statutes or

regulations intended for the general welfare, that imposition should come from the Legislature." *O'Connor v. City of New York*, 58 N.Y.2d at 192, 460 N.Y.S.2d 485, 447 N.E.2d 33.

{¶77} When we first adopted the public-duty rule to determine a municipality's tort liability in *Sawicki v. Ottawa Hills* (1988), 37 Ohio St.3d 222, 525 N.E.2d 468, we had already abolished the judicially created doctrine of municipal immunity in *Enghauser Mfg. Co. v. Eriksson Eng. Ltd.* (1983), 6 Ohio St.3d 31, 6 OBR 53, 451 N.E.2d 228. We explained: "Rather than being an absolute defense, as was sovereign immunity, the public duty rule comported with the principles of negligence, and was applicable to the determination of the extent to which a statute may encompass the duty upon which negligence is premised.   * * * It can therefore be concluded that the public duty rule is an independent doctrine and, consequently, survives the abrogation of sovereign immunity." *Sawicki*, 37 Ohio St.3d at 230, 525 N.E.2d 468.

{¶78} When the court applied the public-duty rule to claims against the state in *Anderson v. Ohio Dept. of Ins.* (1991), 58 Ohio St.3d 215, 569 N.E.2d 1042, and *Hurst v. Ohio Dept. of Rehab. & Corr.* (1995), 72 Ohio St.3d 325, 650 N.E.2d 104, the state had already waived its immunity from liability under R.C. 2743.02. Consistent with *Sawicki*, we naturally determined that the public-duty rule is a defense independent of sovereign immunity and, therefore, is unaffected by the waiver of state immunity. *Anderson,* 58 Ohio St.3d at 218, 569 N.E.2d 1042; *Hurst*, 72 Ohio St.3d at 329, 650 N.E.2d 104.

{¶79} According to the majority, however, *Anderson* and *Hurst* should have been decided differently from *Sawicki* because the state, in waiving its immunity under R.C. 2743.02(A)(1), consented to be sued, and have its liability determined, "in accordance with the same rules of law applicable to suits between private parties." Thus, while the public-duty rule may have survived the abrogation of

municipal immunity, as held in *Sawicki*, a different inquiry is required to determine whether the rule survives the waiver of state immunity under R.C. 2743.02(A)(1).

{¶80} This analysis must fail, however, because it proceeds from a false premise. In order to distinguish *Anderson* and *Hurst* from *Sawicki*, it must necessarily be shown that R.C. 2743.02(A)(1)'s waiver of state immunity is distinguishable from *Enghauser's* abrogation of municipal immunity. In other words, R.C. 2743.02(A)(1) must be interpreted to impose a broader or different liability on the state than *Enghauser* imposes on municipalities. This is the majority's unstated yet essential premise, for without it there is no basis on which to avoid *Sawicki's* holding that the public-duty rule survives the abrogation of sovereign immunity.

{¶81} Yet in *Reynolds v. State* (1984), 14 Ohio St.3d 68, 70, 14 OBR 506, 471 N.E.2d 776, the very case upon which the majority relies to support the second paragraph of its syllabus, we specifically rejected this interpretation of R.C. 2743.02, stating that "[t]he abrogation of the sovereign immunity of the state, which was accomplished by the passage of R.C. 2743.02, is not significantly different from the common-law abrogation of municipal sovereign immunity accomplished by this court [in *Enghauser*]." We then held that the language in R.C. 2743.02 that the state shall "have its liability determined * * * in accordance with the same rules of law applicable to suits between private parties" means essentially the same thing as *Enghauser* held with regard to the abrogation of municipal immunity. Compare *Reynolds*, at paragraph one of the syllabus, with *Enghauser*, 6 Ohio St.3d 31, 6 OBR 53, 451 N.E.2d 228, at paragraph two of the syllabus.

{¶82} There is, therefore, no substantial difference between R.C. 2743.02(A)(1)'s waiver of state immunity and *Enghauser's* abrogation of municipal immunity. To the contrary, R.C. 2743.02(A)(1) imposes the same liability on the state that *Enghauser* imposes on municipalities. Thus, in

determining the viability of the public-duty rule, there is no valid basis on which to distinguish suits against the state from suits against municipalities.

{¶83} On a more basic level, there is no reciprocal relationship between R.C. 2743.02(A)(1) and the public-duty rule. Sovereign immunity is a defense that bars only the enforcement of civil liability. Conceptually, it does not deny the existence of a duty or the wrongfulness of government conduct. Instead, it functions to exempt government from the usual liability that flows from the breach of an established duty of care. The sovereign-immunity doctrine may readily admit of the existence of a tort because it applies nonetheless to disallow all liability within the limits of the immunity.

{¶84} In waiving the state's immunity from liability, R.C. 2743.02(A)(1) does nothing more than remove this exemption, thereby exposing the state to liability for those acts or omissions that would have been actionable at common law but for its immunity. The statute does not expressly abolish the public-duty rule, nor does it purport to define negligence, establish duties, or create new causes of action. It leaves these matters for judicial determination in accordance with the same common-law principles that govern the liability of private parties. R.C. 2743.02(A)(1) does not, therefore, obviate the plaintiff's burden of establishing the elements of actionable negligence.

{¶85} The liability of any defendant charged with negligence is premised on the existence and breach of a duty owed to the person claiming injury. In determining the existence of any duty, courts must inevitably consider the status of the parties involved, including their relationships to one another and society at large, and then make a social judgment as to whether and to what extent the plaintiff's interests are entitled to legal protection against the defendant's conduct. The considerations of policy that inhere in this determination will necessarily vary and shift depending on the nature of the duty for which legal recognition is sought.

**{¶86}** In ascertaining the existence of a public duty, courts must therefore consider the relationship between government and its citizens and decide whether public policy supports a rule that would subject the government to liability every time one of its employees fails to enforce a statute or regulation intended for the general welfare. Viewed in this light, the public-duty rule is but a conclusory expression of those considerations that lead us to answer this inquiry in the negative. It is basically a function of those common-law principles that inhere in the determination of duty and, as such, lies beyond the reach of either the application or the abrogation of sovereign immunity.

**{¶87}** This is why the two doctrines—sovereign immunity and public duty—are considered to be independent of each other, so that the abrogation of one does not affect the viability of the other. This is also why most courts have adopted or retained the public-duty rule, as we did in *Anderson* and *Hurst*, despite the passage of statutes similar to R.C. 2743.02 in their respective jurisdictions. See, e.g., *Washington v. Lexington Cty. Jail*, 337 S.C. at 404-405, 523 S.E.2d 204; *Walker v. Meadows*, 206 W.Va. at 83, 521 S.E.2d 801; *Stone v. North Carolina Dept. of Labor*, 347 N.C. at 478, 495 S.E.2d 711; *Tipton v. Tabor*, 567 N.W.2d at 356-357; *Holsten v. Massey*, 200 W.Va. at 780-784, 490 S.E.2d 864; *Ezell v. Cockrell*, 902 S.W.2d at 399; *Denis Bail Bonds, Inc. v. State* (1993), 159 Vt. 481, 622 A.2d 495; *J & B Dev. Co., Inc. v. King Cty.* (1983), 100 Wash.2d 299, 304, 669 P.2d 468; *Cracraft v. St. Louis Park*, 279 N.W.2d at 803-806; *Motyka v. Amsterdam*, 15 N.Y.2d at 138, 256 N.Y.S.2d 595, 204 N.E.2d 635; 57 American Jurisprudence 2d, supra, Municipal, County, School, and State Tort Liability, Sections 92 and 93.

**{¶88}** The majority argues, however, that this view of the public-duty rule as a function of duty "ignores a vital feature of the doctrine that is incompatible with R.C. 2743.02(A)(1). The applicability of the public-duty rule depends upon the public status of the particular defendant raising it as a bar to liability. In other

38

words, only *governmental* entities and their employees may rely on the rule. It is spurious logic to conclude that a doctrine that is, by definition, available only to *public* defendants can be consistent with a statute mandating that suits be determined in accordance with rules of law applicable to *private* parties." (Emphasis sic.)

{¶89} This analysis is conceptually upside down. In passing R.C. 2743.02(A)(1), the General Assembly incorporated the common-law rules of negligence. The applicable common-law rule that is relevant here provides that actionable negligence depends upon the breach of a duty owed by the defendant to the injured plaintiff. The application of the public-duty rule is dependent upon the public status of the particular defendant who invokes it because the duty that is sought to be imposed on that defendant depends solely on the defendant's public status. It is the alleged duty, not the rule, that in the first instance brings the defendant's public status into play. The rule simply responds to the public nature of the duty for which legal recognition is sought.

{¶90} Moreover, the rejection of the public-duty rule will actually result in the state having its liability determined in accordance with rules of law that are not applicable in suits brought against private tortfeasors. Private parties do not owe a duty of protection to those with whom they have no special relationship and for whose benefit they have not assumed to act. See, generally, 2 Restatement of the Law 2d, Torts (1965), Sections 314 et seq. Nor are private parties liable for the breach of public duties. Instead, they are benefited by the same public-duty/special-duty dichotomy that inheres in the public-duty rule. Thus, duties created by legislative enactments or administrative regulations that are intended for the protection or benefit of the public at large cannot form the basis of a negligence action even against private parties. See, e.g., *Wagner v. Anzon, Inc.* (1996), 453 Pa.Super. 619, 627, 684 A.2d 570; *Tri-State Mint, Inc. v. Riedel Env. Serv., Inc.* (C.A.8, 1994), 29 F.3d 424, 426; *Hagen v. Sioux Falls* (1990), 464 N.W.2d 396,

399; *Taylor v. Stevens Cty.* (1988), 111 Wash.2d 159, 163, 759 P.2d 447; *Bittle v. Brunetti* (Colo.1988), 750 P.2d 49; *Nichols v. Sitko* (1987), 157 Ill.App.3d 950, 109 Ill.Dec. 903, 510 N.E.2d 971; *Gardner v. Wood* (1987), 429 Mich. 290, 311-312, 414 N.W.2d 706; *J & B Dev. Co. v. King Cty.*, 100 Wash.2d at 304, 669 P.2d 468; *Cracraft v. St. Louis Park*, 279 N.W.2d at 805-806; 2 Restatement of the Law 2d, Torts, supra, Section 288; 57A American Jurisprudence 2d (1989) 683-684, Damages, Section 767.

{¶91} As explained by the Supreme Court of North Carolina:

{¶92} "Private persons do not possess public duties. Only governmental entities possess authority to enact and enforce laws for the protection of the public. See *Grogan v. Commonwealth*, 577 S.W.2d 4, 6 (Ky.) (recognizing that if the State were held liable for a failure to enforce laws and regulations establishing safety standards for construction and use of buildings, the State's *status* as a governmental entity 'would be the only basis *for* holding a city or state liable, because only a governmental entity possesses the authority to enact and enforce laws for the protection of the public'), *cert. denied*, 444 U.S. 835 [100 S.Ct. 69], 62 L.Ed.2d 46 (1979). If the State were held liable for performing or failing to perform an obligation to the public at large, the State would have liability when a private person could *not*. The public duty doctrine, by barring negligence actions against a governmental entity absent a 'special relationship' or a 'special duty' to a particular individual, serves the legislature's express intention to permit liability against the State only when a private person could be liable." (Emphasis sic.) *Stone v. North Carolina Dept. of Labor*, 347 N.C. at 478-479, 495 S.E.2d 711.

{¶93} Thus, as succinctly stated by the Supreme Court of Iowa, the public-duty rule is " 'consistent with the principle that public employees share the same— but not greater—liability to injured parties as other defendants under like circumstances.' " *Kolbe v. State*, 625 N.W.2d at 729, quoting *Sankey v. Richenberger* (Iowa 1990), 456 N.W.2d 206, 209.

{¶94} The majority insists that "[c]ases from this court, however, suggest otherwise. We have expressly stated that a duty, for purposes of a negligence claim, may arise out of a legislative enactment. *Chambers* [*v. St. Mary's School* (1998)], 82 Ohio St.3d [563] at 565, 697 N.E.2d 198; see, also, *Gelbman v. Second Natl. Bank of Warren* (1984), 9 Ohio St.3d 77, 79, 9 OBR 280, 458 N.E.2d 1262. And this court has cited statutory law as a means of addressing whether the duty element was satisfied in negligence suits against private parties. See, e.g., *Mussivand* [*v. David* (1989)], 45 Ohio St.3d [314] at 320, 544 N.E.2d 265; *Shroades v. Rental Homes* (1981), 68 Ohio St.2d 20, 22 O.O.3d 152, 427 N.E.2d 774. Thus, as a general matter, government actors are not alone in having duties imposed upon them by statute."

{¶95} But in the absence of the public-duty rule, government actors would be alone in having public or general protective duties imposed upon them by statute, and the cases on which the majority relies do not suggest otherwise. In none of these cases has this court indicated that public duties created by statute can form the basis of a negligence action against private parties. Nor do any of these cases cite statutory law as a means of imposing a general duty on private parties to act affirmatively for another's protection.

{¶96} In *Mussivand*, we held that "[a] person who knows, or should know, that he or she is infected with a venereal disease has the duty to abstain from sexual conduct or, at a minimum, to warn those persons with whom he or she expects to have sexual relations of his or her condition." Id., 45 Ohio St.3d 314, 544 N.E.2d 265, at paragraph one of the syllabus. In so holding, we cited R.C. 3701.81(A) as statutory support for this duty. Id., 45 Ohio St.3d at 319, 544 N.E.2d 265. R.C. 3701.81(A) provides, "No person, knowing or having reasonable cause to believe that he is suffering from a dangerous, contagious disease, shall knowingly fail to take reasonable measures to prevent exposing himself to other persons, except when seeking medical aid."

**{¶97}** It is immediately apparent that both R.C. 3701.81(A) and the holding in *Mussivand* require an individual to control only his or her own conduct so as not to harm another. They do not, however, establish any sort of general duty under which a private party is obligated to control or protect against the conduct or condition of a third person. This kind of duty could not be imposed on a private actor in the absence of a special relationship as provided in Restatement of Torts Sections 314 and 315.

**{¶98}** In *Gelbman*, the court *declined* to impose an affirmative duty on a private property owner to protect third parties from the negligent acts of business invitees that occur outside the owner's property and are beyond the owner's control. In so doing, we explained that "liability in negligence will not lie in the absence of a special duty owed by the defendant" and that "unless a special relationship between defendant-owner and plaintiff-third party is extant by statute or judicial determination, no duty may be imposed." Id., 9 Ohio St.3d at 78, 79, 9 OBR 280, 458 N.E.2d 1262. See, also, *Eichorn v. Lustig's, Inc.* (1954), 161 Ohio St. 11, 52 O.O. 467, 117 N.E.2d 436, syllabus (private property owner has no common-law duty to protect others from defective conditions that exist outside the owner's property "unless such defects are created or negligently maintained or permitted to exist by such owner for his own private use or benefit").

**{¶99}** In *Chambers*, the court held that the violation of an administrative rule, such as the Ohio Basic Building Code, does not constitute negligence per se. In so holding, the court distinguished administrative rules from legislative enactments, the violation of which was held to constitute negligence per se in *Eisenhuth v. Moneyhon* (1954), 161 Ohio St. 367, 53 O.O. 274, 119 N.E.2d 440. 82 Ohio St.3d at 566-567, 697 N.E.2d 198. In *Eisenhuth*, the court explained: "The violation of any specific legislative enactment enacted for the protection of private persons is of itself such a breach of duty as to constitute negligence. * * * However, a legislative enactment which does not purport to define a civil liability *but merely*

*makes provision to secure the safety or welfare of the public* is not to be construed as establishing such a liability." (Emphasis added.) Id., 161 Ohio St. at 372-373, 53 O.O. 274, 119 N.E.2d 440.

{¶100} In *Chambers*, the court stated, "Typically, a duty may be established by common law, legislative enactment, or by the particular facts and circumstances of the case." 82 Ohio St.3d at 565, 697 N.E.2d 198. Given that *Chambers* did not even deal with a statute, it can hardly be asserted that this rather innocuous observation suggests that statutory duties imposed for the protection of the general public can form the basis of a negligence claim against a private party.

{¶101} In *Shroades*, we held that "[a] landlord is liable for injuries, sustained on the demised residential premises, which are proximately caused by the landlord's failure to fulfill the duties imposed by R.C. 5321.04." Id., 68 Ohio St.2d 20, 22 O.O.3d 152, 427 N.E.2d 774, at the syllabus. However, the duties imposed by R.C. 5321.04 are not intended for the protection and benefit of the general public but are intended "to protect persons using rented residential premises from injuries." Id., 68 Ohio St.2d at 25, 22 O.O.3d 152, 427 N.E.2d 774.

{¶102} In fact, when this court modified *Shroades* in *Sikora v. Wenzel* (2000), 88 Ohio St.3d 493, 497, 727 N.E.2d 1277, we relied on Sections 288A and 288B of the Restatement of Torts in determining when a landlord will be excused from liability for violating the duties imposed by R.C. 5321.04. Sections 288A and 288B come into play, however, only after a determination is made whether the standard of conduct defined by a particular statute should be adopted under Section 286 as the standard of conduct for tort liability or rejected under Section 288. Pursuant to Section 288, courts will not adopt the requirements of legislative enactments that are "intended only for the protection of the interests of the community as such, or of the public at large, rather than for the protection of any individual or class of persons." 2 Restatement of Torts at 30, Comment *b*. Nor will they rely on statutes that are enacted "only for the purpose of securing to individuals

the enjoyment of rights and privileges to which they are entitled as members of the public, rather than for the purpose of protecting any individual from harm." Id. at 31, Comment *c*.

{¶103} Moreover, since we are now comparing duties imposed on public and private parties, it is worthwhile to point out that the public-duty rule does not apply to prevent the imposition of similar statutory duties on the state in its capacity as landowner. See, e.g., *Oberg v. Dept. of Natural Resources* (1990), 114 Wash.2d 278, 787 P.2d 918.

{¶104} In finding the public-duty rule to be inconsistent with R.C. 2743.02(A)(1) merely because private parties have duties imposed upon them by statute, the majority has therefore engaged an apples-oranges comparison. The nature of the duties that can be legitimately imposed upon private parties by statute for purposes of negligence under the foregoing decisions are inherently different from those statutorily created duties that the majority's decision now imposes upon public parties. There is a qualitative difference between imposing statutory duties on private parties to control their own activities and imposing statutory duties on public employees to control the activities of others. It must not be forgotten that today's decision imposes potential liability on the fire marshal for failure to act affirmatively so as to ascertain and correct a defect on private land that he did not create, for the aid and protection of third parties with whom he had no special relationship, and purportedly derives from an internal rule adopted pursuant to the discretionary portion of a statute that was enacted for the safety and welfare of the general public. This is a far cry from imposing statutory duties on a landlord to remedy known defects on his own premises for the safety of those who are invited to use his property.

{¶105} In the second part of its opinion, the majority attempts to assuage any fear on the part of government that the abolition of the public-duty rule will engender excessive state liability. According to the majority, "there are already

important safeguards in Court of Claims jurisprudence that satisfy the public-policy concerns addressed by the public-duty rule." The majority also advises that "conventional negligence principles already provide some measure of protection * * * to the actions of a state tortfeasor," while pointing to some of the same principles that justify the public-duty rule in the first instance. Based on these safeguards and principles, the majority concludes that "the public-policy rationales that supported our adoption of the public-duty rule in *Sawicki* do not carry the same force when analyzing whether the doctrine should apply to suits against the state in the Court of Claims."

{¶106} However, the majority never concludes that the public-duty rule is unjust, or finds that its underlying policy considerations are invalid, or otherwise explains why it is preferable to rely on other safeguards and protections against excessive government liability that go only part way in addressing the legitimate concerns of the public-duty rule. Moreover, every safeguard and common-law rule cited by the majority, including that provided by *Reynolds*, is equally applicable in claims against municipalities. Thus, the policy considerations that supported our adoption of the public-duty rule in *Sawicki* carry precisely the same force in determining whether the doctrine should apply to suits against the state.

{¶107} For all of the foregoing reasons, I would affirm the judgment of the court of appeals, which denied liability in this case upon the application of the public-duty rule.

MOYER, C.J., and LUNDBERG STRATTON, J., concur in the foregoing dissenting opinion.

———————————

**LUNDBERG STRATTON, J., dissenting.**

{¶108} I do not believe that the language in R.C. 2743.02 that requires that the state shall "have its liability determined * * * in accordance with the same rules of law applicable to suits between private parties" conflicts with the public-duty

rule. I would continue to adhere to the public-duty rule pursuant to *Sawicki v. Ottawa Hills* (1988), 37 Ohio St.3d 222, 525 N.E.2d 468, and its progeny. Therefore, I respectfully dissent.

**{¶109}** The majority reasons that the language in R.C. 2743.02 that states that a lawsuit against the state must be determined in accordance with the "same rules of law applicable to suits between private parties" conflicts with the public-duty rule because the public-duty rule is a defense that applies only to the government. Thus, the majority interprets the phrase "same rules of law" to mean that a statute cannot affect the state differently than it would affect private parties. I believe that the majority misconstrues the language of R.C. 2743.02.

**{¶110}** The majority in the second paragraph of its syllabus excludes judicial and legislative functions from the waiver of immunity, but I simply cannot follow its logic as to why these areas fall outside the language of "suits between private parties," while a *public* duty is somehow included. The reasoning is so internally inconsistent that I find it difficult to even argue against.

**{¶111}** The General Assembly waived the state's immunity from liability when it enacted R.C. 2743.02. However, R.C. 2743.02 does not create "new rights or causes of action." *Reese v. Ohio State Univ. Hosp.* (1983), 6 Ohio St.3d 162, 163, 6 OBR 221, 451 N.E.2d 1196. "[I]t only provides a remedy for existing duties where the state was previously immune from suit and a *private party under similar circumstances would have been liable*." (Emphasis added.) *Shelton v. Indus. Comm.* (1976), 51 Ohio App.2d 125, 130, 5 O.O.3d 286, 367 N.E.2d 51.

**{¶112}** In *Shelton,* the court addressed whether the language in R.C. 2743.02(A)(1), that made the state liable in accordance with the same rules of law applicable between private parties, permitted an injured worker to sue the Industrial Commission for failure to enforce safety standards. 51 Ohio App.2d 125, 5 O.O.3d 286, 367 N.E.2d 51. The court held that because there was no statutory duty among private parties to inspect and enforce safety standards, the injured worker could not

sue the Industrial Commission because such an action did not exist between private parties before the waiver of immunity.

{¶113} The majority states that the *Shelton* "reasoning operates on the unstated premise that statutes creating duties for governmental actors cannot satisfy the duty element for purposes of the state's liability for negligence because there are no statutory duties that may similarly bind private parties." The majority then dismisses the *Shelton* reasoning, recognizing that "government actors are not alone in having duties imposed on them by statute."

{¶114} The language waiving sovereign immunity "should be construed reasonably to at least make sure that before the public treasury is emptied the result was intended by the legislature." *Oregon v. Ferguson* (1978), 57 Ohio App.2d 95, 102, 11 O.O.3d 94, 385 N.E.2d 1084. The majority's analysis fails to recognize that *some* statutes that are enacted for the welfare of the public generally can be imposed only on the state. *Shelton*, 51 Ohio App.2d at 131, 5 O.O.3d 286, 367 N.E.2d 51, see, also, *Stone v. North Carolina Dept. of Labor* (1998), 347 N.C. 473, 495 S.E.2d 711. Therefore, statutes that impose these public duties are not applicable in suits between private parties. *Oregon*, 57 Ohio App.2d at 101-102, 11 O.O.3d 94, 385 N.E.2d 1084; *Stone,* 347 N.C. at 478, 495 S.E.2d 711. Because these public-duty statutes impose duties only upon the government and not on private parties, they may not be the basis for an action against the state because they are not "in accordance with the same rules of law applicable to suits between private parties."

{¶115} The public-duty rule is a defense that applies only where a lawsuit against the state is based upon a law that imposes a public duty *on the state*. See *Hurst v. Ohio Dept. of Rehab. & Corr.* (1995), 72 Ohio St.3d 325, 650 N.E.2d 104; cf. *Brodie v. Summit Cty. Children Serv. Bd.* (1990), 51 Ohio St.3d 112, 119, 554 N.E.2d 1301 (child-abuse statute imposes specific duty on state to each allegedly abused child; thus, the public-duty rule is not applicable). Therefore, the

requirement in R.C. 2743.02 that the state's liability be determined according to the same rules of law that apply to suits between private parties does not conflict with the public-duty rule.

{¶116} Further, I believe that the majority's holding could have unintended consequences. R.C. 2743.02 also requires courts to apply the same rules of procedure that apply between private parties. *Reese,* 6 Ohio St.3d at 164, 6 OBR 221, 451 N.E.2d 1196. Civ.R. 62, which applies to lawsuits between private parties, treats the state differently from private persons when seeking a stay upon an appeal. Under Civ.R. 62, the state is provided an automatic stay without the requirement of bond, while a private person must post bond. *State ex rel. State Fire Marshal v. Curl* (2000), 87 Ohio St.3d 568, 722 N.E.2d 73. According to the majority's reasoning, Civ.R. 62(C), which permits a stay in favor of the state without bond, would no longer be applicable because it treats the state differently from other private parties. I do not believe that the General Assembly intended the nullification of rules or statutes solely because they treat the state differently.

{¶117} Finally, the Tenth District Court of Appeals, first in *Shelton* and later in *Ferguson,* invited the General Assembly to correct the court's interpretation that the state could not be sued pursuant to statutes where the duty was owed only to the public generally if it disagreed with these judgments. *Shelton,* 51 Ohio App.2d at 131, 5 O.O.3d 286, 367 N.E.2d 51; *Ferguson,* 57 Ohio App.2d at 102, 11 O.O.3d 94, 385 N.E.2d 1084, 1088. Despite this invitation, the General Assembly has taken no such action.

{¶118} Because I strongly believe that the majority's interpretation is clearly not what the General Assembly intended, I invite the *General Assembly* to clarify whether *they* intended the phrase, "suits between private parties," to abrogate the public-duty rule.

{¶119} Therefore, I would affirm the judgment of the court of appeals. Accordingly, I respectfully dissent.

_____

Waite, Schneider, Bayless & Chesley Co., L.P.A., Stanley M. Chesley, Paul M. De Marco, Robert A. Steinberg, D. Arthur Rabourn and Jane H. Walker, for appellants.

Betty D. Montgomery, Attorney General, Stephen P. Carney, Associate Solicitor, William C. Becker, Randall W. Knutti and Rebecca L. Thomas, Assistant Attorneys General, for appellee.

Vorys, Sater, Seymour & Pease, L.L.P., Duke W. Thomas, Anthony J. O'Malley and Marcel C. Duhamel, urging reversal for amicus curiae OHA: The Association of Hospitals and Health Systems.

Jenks, Surdyk, Oxley, Turner & Dowd Co., L.P.A., Robert J. Surdyk and James Ickes, urging affirmance for amici curiae Public Entities Pool of Ohio and Ohio Township Association Risk Management Authority.

_____