OPINION
{¶ 1} Plaintiffs-appellants, Elena Martinez, individually, and as guardian of Paul S. Olvera, David Olvera, and Dyana Olvera (collectively, "plaintiffs"), appeal from a judgment of the Franklin County Court of Common Pleas granting the summary judgment motions of defendants-appellees, B.P. Products, Inc. ("B.P. Products"), Century Tool Manufacturing ("Century Tool"), Sherwood, Harsco Corporation Gas Fluid Control Group ("Sherwood"), and the renewed motion for summary judgment of Accuflex Industrial Hose, Ltd. ("Accuflex").
 {¶ 2} According to plaintiffs, in October 1990, Paul Olvera purchased a Southern Pride wood burning barbecue pit from Yoho's Fast Food Equipment in Columbus, Ohio. The wood burning barbecue pit was designed and manufactured by B.B. Robertson Company with component parts manufactured, designed, sold, and distributed by different defendants. On June 5, 1995, the barbecue pit exploded and, as a result, Paul Olvera suffered serious injuries, including a closed head injury.
 {¶ 3} On March 26, 1996, plaintiffs filed suit in the Franklin County Court of Common Pleas. Plaintiffs voluntarily dismissed the action on December 4, 1998, without prejudice.
 {¶ 4} On December 3, 1999, plaintiffs re-filed a complaint against the manufacturer of the barbecue pit, the seller of the used barbecue pit, and various component manufacturers. In the re-filed complaint, plaintiffs alleged negligence, strict liability, statutory products liability, and loss of consortium. Plaintiffs sought compensatory damages, punitive damages, reasonable attorney fees and expenses, and interest.
 {¶ 5} Since the commencement of their action, plaintiffs have dismissed claims against several defendants, and indicated their intention to re-file a stipulation of dismissal without prejudice concerning others. Moreover, from May 23, 2000 to January 12, 2001, the trial court stayed plaintiffs' case during the pendency of an interlocutory appeal to this court. See Martinez v. Yoho's Fast Food Equipment (Dec. 19, 2000), Franklin App. No. 00AP-441 (reversing denial of pro hac vice status of plaintiffs' attorney). Following this court's judgment in Martinez, the trial court returned the case to its active docket.
 {¶ 6} On March 29, 2001, the trial court granted the summary judgment motions at issue in this appeal, but did not include Civ.R. 54(B) language. Plaintiffs filed a notice of appeal on April 27, 2001; this appeal was later dismissed for lack of a final appealable order. On December 21, 2001, the trial court filed an entry including the necessary language. On January 18, 2002, plaintiffs again appealed, assigning the following errors:
 {¶ 7} "1. The trial court abused its discretion by denying Appellants' request for a continuance pursuant to Civ.R. 56(F).
 {¶ 8} "2. The trial court erred in granting summary judgment to Appellees Accuflex, B.P. Products, Century Tool and Sherwood where limited discovery still needed to be completed.
 {¶ 9} "3. The trial court erred in granting summary judgment to Appellee B.P. Products on statute of limitations grounds.
 {¶ 10} "4. The trial court erred in granting summary judgment to Appellees Accuflex, B.P. Products, Century Tool and Sherwood where Appellants presented evidence of genuine issues of material fact as to each of these Appellees."
 {¶ 11} An appellate court's review of summary judgment is conducted under a de novo standard. Coventry Twp. v. Ecker (1995),101 Ohio App.3d 38, 41; Koos v. Cent. Ohio Cellular, Inc. (1994),94 Ohio App.3d 579, 588. Summary judgment is proper only when the party moving for summary judgment demonstrates: (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56; State ex rel. Grady v. State Emp. Relations Bd. (1997), 78 Ohio St.3d 181, 183.
 {¶ 12} Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. Once the moving party discharges its initial burden, summary judgment is appropriate if the non-moving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial. Dresher at 293; Vahila v. Hall (1997),77 Ohio St.3d 421, 430; Civ.R. 56(E).
 {¶ 13} In their first assignment of error, plaintiffs contend the trial court abused its discretion by denying plaintiffs' request for a continuance pursuant to Civ.R. 56(F). In their second assignment of error, plaintiffs contend the trial court erred in granting summary judgment where limited discovery was still needed. Because the two assignments of error are interrelated, we address them jointly.
 {¶ 14} Under Civ.R. 56(F), "[s]hould it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just." As noted in Carlton v. Davisson (1995), 104 Ohio App.3d 636, 648 "[t]he provisions of Civ.R. 56(F) are all discretionary. They are not mandatory. * * * Accordingly, absent an abuse of discretion, the trial court's denial of appellant's motion cannot be reversed. Therefore, appellant must establish that the trial court's attitude in reaching its judgment was unreasonable, arbitrary or unconscionable." (Citations omitted.)
 {¶ 15} Here, plaintiffs first filed suit on March 26, 1996, and voluntarily dismissed the action on December 4, 1998, without prejudice. During that time, plaintiffs had an opportunity to conduct discovery for a period of a little more than two years and eight months. Plaintiffs re-filed the suit on December 3, 1999. From December 3, 1999 until the trial court's stay on May 23, 2000, plaintiffs had a period of more than five months to conduct discovery. Accordingly, plaintiffs had more than three years, in the aggregate, to carry out their discovery.
 {¶ 16} Additionally, plaintiffs arguably could have conducted discovery from May 23, 2000 to January 12, 2001, while their case was pending in this court during the first appeal. Even if, however, we exclude that time, plaintiffs had more than five additional weeks within which to conduct further discovery, from January 12, 2001, the date the trial court reactivated their case, until February 20, 2001, the date the trial court required responses to the pending summary judgment motions of Sherwood, Century Tool and B.P. Products. Plaintiffs had even more time concerning Accuflex because Accuflex did not file its renewed motion for summary judgment until March 20, 2001.
 {¶ 17} Further, we cannot ignore that, because both Sherwood and Century Tool filed summary judgment motions prior to the trial court's stay, plaintiffs had ample forewarning about their arguments. Nonetheless, plaintiffs waited until February 5, 2001 before seeking additional discovery time under Civ.R. 56(F).
 {¶ 18} Acting on the noted facts, the trial court was not unconscionable, arbitrary or unreasonable in denying plaintiffs' Civ.R. 56(F) motion. In total, plaintiffs had more than three years prior to the trial court's stay, plus more than a month after the case was reactivated, to conduct discovery concerning defendants Sherwood, Century Tool and B.P. Products, and even more time to conduct discovery regarding Accuflex. Under those circumstances, plaintiffs were given a sufficient opportunity to carry out the discovery needed to respond to defendants' summary judgment motions. Accordingly, plaintiffs' first and second assignments of error are overruled.
 {¶ 19} In their third and fourth assignments of error, plaintiffs contend (1) the trial court erred in determining plaintiffs' claim against B.P. Products was barred by the statute of limitations, and (2) the trial court improperly granted summary judgment to Sherwood, Accuflex, Century Tool, and B.P. Products because genuine issues of material fact remain regarding plaintiffs' claims of negligence, strict liability, statutory products liability and loss of consortium. We address the assignments of error jointly.
 {¶ 20} In Ohio, "[i]t is well settled that the elements of an ordinary negligence suit between private parties are (1) the existence of a legal duty, (2) the defendant's breach of that duty, and (3) injury that is the proximate cause of the defendant's breach." Wallace v. Ohio Dept. of Commerce, Div. of State Fire Marshall, 96 Ohio St.3d 266,2002-Ohio-4210, at ¶ 22, citing Mussivand v. David (1989),45 Ohio St.3d 314, 318.
 {¶ 21} On the other hand, "[a]t common law, products liability law, an outgrowth of the laws of contracts and negligence, evolved as a separate, identifiable body of law. * * * While products liability cases often involved issues of negligence as well as strict liability, these doctrines have consistently been regarded as complementary but distinct." Carrel v. Allied Products Corp. (1997), 78 Ohio St.3d 284, 287, fn. 1. (Citation omitted.) See, also, Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317. But, see, Carrel at 288 (R.C. 2307.75 codifies strict liability common law theories).
 {¶ 22} Statutory products liability claims are governed by R.C.2307.71 et seq. Pursuant to R.C. 2307.71(M), a " `[p]roduct liability claim' means a claim that is asserted in a civil action and that seeks to recover compensatory damages from a manufacturer or supplier for death, physical injury to person, emotional distress, or physical damage to property other than the product in question, that allegedly arose from any of the following:
 {¶ 23} "(1) The design, formulation, production, construction, creation, assembly, rebuilding, testing, or marketing of that product;
 {¶ 24} "(2) Any warning or instruction, or lack of warning or instruction, associated with that product;
 {¶ 25} "(3) Any failure of that product to conform to any relevant representation or warranty."
 {¶ 26} Common law products liability actions survive the enactment of R.C. 2307.71 unless specifically covered by the Ohio Products Liability Act. See Carrel at 289, quoting Byers v. Consol. Aluminum Corp. (1995), 73 Ohio St.3d 51, 52 (Douglas, J., dissenting) ("it should now be understood that all-common law products liability causes of action survive the enactment of R.C. 2307.71 et seq., the Ohio Products Liability Act, unless specifically covered by the Act because the Act, according to the majority in McAuliffe [v. W. States Import Co., Inc. (1995), 72 Ohio St.3d 534] * * * falls short of creating a previously unavailable cause of action"). (Emphasis sic.)
 {¶ 27} Lastly, "a cause of action based upon a loss of consortium is a derivative action. That means that the derivative action is dependent upon the existence of a primary cause of action and can be maintained only so long as the primary action continues. It logically follows therefrom that a derivative action cannot afford greater relief than that relief which would be permitted under the primary cause of action." Messmore v. Monarch Machine Tool Co. (1983), 11 Ohio App.3d 67,68-69. See, also, Miller v. City of Xenia (Mar. 22, 2002), Greene App. No. 2001 CA 82.
 {¶ 28} Sherwood's motion for summary judgment admits Sherwood manufactured the valves that were incorporated into two liquefied petroleum (LP) cylinders found on the cooker at issue. Each Sherwood valve opens by turning a handwheel at the top of the valve and each valve contains a POL outlet that connects to a POL adaptor. James A. Petersen, a consultant Sherwood retained, examined the valves and supplied an affidavit that Sherwood attached to its motion. In the affidavit, Petersen averred that, on February 17, 1997, he tested both Sherwood valves for leaks and other defects and found no abnormalities. According to Petersen, the valves functioned properly at all times, and he found no evidence that the valves were defective in any way.
 {¶ 29} Additionally, in another affidavit attached to Sherwood's summary judgment motion, Patrick J. McGinley, another retained consultant, averred he personally examined the cooker and the propane gas system connected to the cooker, and he attended the February 17, 1997 inspection of the Sherwood valves. McGinley opined the Sherwood valves could not have contributed to or caused the explosion.
 {¶ 30} In their memorandum in opposition, plaintiffs attached copies of correspondence from November 1998, in which plaintiffs and Sherwood attempted to confirm protocol details concerning the valve testing. According to plaintiffs, because an agreed protocol was not reached, additional discovery time was warranted. Plaintiffs also attached an affidavit of W. Alan Bullerdiek, who averred that "[i]n the absence of a failure of a component of the cooker gas control system, the only explanation for the release of gas surrounding the cooker was the failure of the Sherwood valve, or the LP-gas hose assembly." (Bullerdiek Affidavit, ¶ 6.)
 {¶ 31} For the reasons noted, plaintiffs' contention that additional discovery time was warranted is not persuasive. Further, with Bullerdiek's affidavit construed most strongly in plaintiffs' favor, plaintiffs' evidence is insufficient to create a genuine issue of material fact regarding Petersen's findings that the Sherwood valves were free from defects or abnormalities. Bullerdiek avers that either the Sherwood valves or the LP-gas hose assembly failed, opining about possible theories in the absence of a failure of the cooker gas control system. Bullerdiek, however, does not contradict Petersen's findings that the Sherwood valves were not defective. Having no evidence that the Sherwood valves failed, plaintiffs were unable to support their claims of negligence, strict liability, or statutory products liability against Sherwood's motion. Accordingly, the trial court did not err in granting summary judgment to Sherwood.
 {¶ 32} Plaintiffs also contend the trial court erred in granting Accuflex's renewed motion for summary judgment. According to plaintiffs, Accuflex's liability is premised on its failing to warn the hose fabricators of (1) the dangers of improper fabrication using Accuflex's LP-gas hose, and (2) the proper method of fabrication.
 {¶ 33} In Searls v. Doe (1986), 29 Ohio App.3d 309, 312, this court determined that manufacturers of component parts have "no duty to warn plaintiff of a potentially dangerous or defective design of a system, where defendants were not responsible for the design and manufacture of the entire system and where the component parts, not in and of themselves dangerous or defective, were manufactured in accordance with specifications." See, also, Temple at 317-318, paragraph four of the syllabus ("[t]here is no duty to warn extending to the speculative anticipation of how manufactured components, not in and of themselves dangerous or defective, can become potentially dangerous dependent upon their integration into a unit designed and assembled by another"); accord Restatement of the Law 3d, Torts (1998) 130, Section 5.
 {¶ 34} Here, plaintiffs neither contend, nor submit evidence, that the hose Accuflex manufactured was in and of itself dangerous or defective. Cf. April 15, 1997 Terry Jackson Deposition, 34 (stating hose was built to specifications of Canadian Gas Association and Underwriters Laboratories' standards). While Accuflex admits that it manufactured the hose at issue on October 31, 1989, Accuflex also states it manufactures only hoses and no other component parts, such as ferrules or barbed inserts, that a hose fabricator may attach or insert into a hose. Moreover, Accuflex is not in the business of making hose assemblies; although Accuflex may offer assistance to individual customers, Accuflex does not provide industry wide recommendations for hose assemblies. Based on Searls and Temple, Accuflex had no duty to warn under the circumstances involved in plaintiffs' case.
 {¶ 35} Moreover, while Accuflex offered evidence that the Accuflex hose at issue performed as expected, plaintiffs offered no evidence to the contrary. Because the evidence showed both that the Accuflex hose was not defective and that Accuflex did not have a duty to warn, plaintiffs failed to establish liability under common law negligence, common law products liability, or statutory products liability. Accordingly, the trial court did not err in granting summary judgment to Accuflex.
 {¶ 36} Plaintiffs contend the trial court erred in granting summary judgment to Century Tool because of genuine issues of material fact concerning (1) the identity of the hose assembly manufacturer, and (2) defects in the hose assembly. According to plaintiffs, evidence in the record demonstrates that either B.P. Products or Century Tool manufactured the hose assembly and, because both deny manufacturing it, a genuine issue of material fact exists.
 {¶ 37} Century Tool responds by noting the evidence that Winzeler Stamping Company ("Winzeler") manufactured the ferrule found on the hose in the cooker. Further, according to Century Tool, it never purchased ferrules from Winzeler. See affidavit of Roger E. Lundstrom dated November 10, 1998, ¶ 17. Century Tool thus contends plaintiffs cannot show it manufactured the hose assembly. Plaintiffs offer no specific facts rebutting Century Tool's evidence that it never purchased any fittings from Winzeler. As a result, plaintiffs are left only with the argument that, because both B.P. Products and Century Tool deny manufacturing the hose assembly, a genuine issue of material fact exists.
 {¶ 38} "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242,248, 106 S.Ct. 2505; see, also, Turner v. Turner (1993), 67 Ohio St.3d 337,339-340; Civ.R. 56 staff notes (noting Ohio summary judgment statute patterned upon Fed.R.Civ.P. 56). Here, although B.P. Products and Century Tool both contend they did not manufacture the hose assembly, such a dispute is irrelevant to Century Tool's liability in light of the uncontested evidence that (1) Winzeler manufactured the ferrule at issue, and (2) Century Tool never purchased fittings from Winzeler. Indeed, a contrary resolution of the issue would mean that whenever multiple defendants deny manufacturing the product at issue, summary judgment could not be granted. Because plaintiffs failed to submit evidence to controvert Century Tool's expert evidence, the trial court properly granted summary judgment to Century Tool. See Anderson at 250.
 {¶ 39} Plaintiffs also contend the trial court erred in granting summary judgment to B.P. Products because (1) plaintiffs' claims are not barred by the statute of limitations, and (2) plaintiffs presented evidence demonstrating at least a genuine issue of material fact that B.P. Products manufactured a defective hose assembly. B.P. Products responds that, because plaintiffs' claims accrued on June 5, 1995, plaintiffs' second amended complaint filed on June 19, 1997, naming B.P. Products as a defendant, was time-barred by Ohio's two-year statute of limitations.
 {¶ 40} At the time plaintiffs filed the first action and at the time of Paul Olvera's injury, the applicable version of R.C. 2305.10
provided that "[a]n action for bodily injury or injuring personal property shall be brought within two years after the cause thereof arose." See, also, Love v. Port Clinton (1988), 37 Ohio St.3d 98 ("When bodily injury results from negligence, the two-year statute of limitations, R.C. 2305.10, is the appropriate statute of limitations"); see, also, Gates v. Precision Post Co. (1996), 74 Ohio St.3d 439 ("This court states that the two-year statute of limitations set forth in R.C. 2305.10 governs personal injury claims arising from products liability statutes set forth in R.C. 2307.71 et seq."). Here, Paul Olvera was injured on June 5, 1995; therefore, absent tolling of the statute of limitations, plaintiffs were required to file their action by June 5, 1997.
 {¶ 41} Plaintiffs, however, contend that the statute of limitations was tolled under the applicable version of R.C. 2305.16:
 {¶ 42} "Unless otherwise provided in sections 1302.98, 1304.35, and 2305.04 to 2305.14 of the Revised Code, if a person entitled to bring any action mentioned in those sections, unless for penalty or forfeiture, is, at the time the cause of action accrues, within the age of minority or of unsound mind, the person may bring it within the respective times limited by those sections, after the disability is removed. When the interests of two or more parties are joint and inseparable, the disability of one shall inure to the benefit of all.
 {¶ 43} "After the cause of action accrues, if the person entitled to bring the action becomes of unsound mind and is adjudicated as such by a court of competent jurisdiction or is confined in an institution or hospital under a diagnosed condition or disease which renders the person of unsound mind, the time during which the person is of unsound mind and so adjudicated or so confined shall not be computed as any part of the period within which the action must be brought." See, also, R.C. 1.02(C) ("As used in the Revised Code, unless the context otherwise requires * * * `[o]f unsound mind' includes all forms of mental retardation or derangement"); Fisher v. Ohio Univ. (1992), 63 Ohio St.3d 484, 487-488, rehearing denied, 63 Ohio St.3d 1475.
 {¶ 44} Here, plaintiffs contend the closed head injury Paul Olvera sustained on June 5, 1995, resulted in cognitive deficits that rendered him of unsound mind immediately following the accident. In support of their argument, plaintiffs submitted (1) an affidavit of the Michigan attorney who filed the petition for appointment of a guardian for Paul Olvera, and (2) copies of letters of temporary guardianship dated June 23, 1995, and full guardianship, dated July 10, 1995.
 {¶ 45} In addition, plaintiffs submitted unauthenticated copies of (1) an October 20, 1995 mental health emergency services consultation report that specified an initial diagnosis of delusional disorder, (2) a November 17, 1995 letter from Harry Lenhart, M.D., that discussed Paul Olvera's psychiatric condition and treatment, and (3) a May 3, 1996 outpatient psychiatry follow-up consultation report by Sheldon D. Rudin, M.D., recording an impression that Paul Olvera had a "[t]raumatic brain injury with cognitive impairment following multiple injuries on 6-5-95" and indicating Paul Olvera "was initially hospitalized at St. Mary's Medical Center on 6-6-95 * * * with a history of blast trauma to the face and brain with left frontal skull fracture with pneumocephalus and left frontal hemorrhagic contusion." Based on that evidence, plaintiffs contend Paul Olvera's injuries rendered him of unsound mind on June 5, 1995.
 {¶ 46} "Under Civ.R. 56(C), a court determining a summary judgment motion must consider only the `pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action * * *.' " State ex rel. The V Cos. v. Marshall (1998), 81 Ohio St.3d 467, 473, quoting State ex rel. Boggs v. Springfield Local School Dist. Bd. of Edn. (1995), 72 Ohio St.3d 94, 97. "The proper procedure for introducing evidentiary matter not specifically authorized by Civ.R. 56(C) is to incorporate it by reference in a properly framed affidavit. * * * Moreover, while it is correct that a court, in its discretion, may consider other documents than those specified in Civ.R. 56(C) if there is no objection * * * there is no requirement that a court do so." Biskupich v. Westbay Manor Nursing Home (1986), 33 Ohio App.3d 220, 222. (Citations omitted.) See, also, Muncy v. American Select Ins. Co. (1998), 129 Ohio App.3d 1, 5-6, discretionary appeal not allowed, 84 Ohio St.3d 1411; Gargallo v. Nationwide Mut. Ins. Co. (2002), Franklin App. No. 01AP-710, appeal not allowed,96 Ohio St.3d 1440.
 {¶ 47} While plaintiffs' unauthenticated documents were not sworn, certified or incorporated into an attached affidavit filed in the trial court the trial court apparently considered the evidence when it stated "the uncontroverted evidence before the Court establishes that Paul Olvera was diagnosed with a delusional disorder on October 20, 1995." (Decision, 17.) Accordingly, in our de novo review we also consider that evidence.
 {¶ 48} Under Fisher, if a plaintiff seeks tolling pursuant to R.C. 2305.16 during the time he or she was confined in an institution or hospital under a diagnosed condition or disease that rendered him or her of unsound mind, the plaintiff must present evidence demonstrating that "he or she was of unsound mind and the disease or condition (1) was determined by a psychiatrist or licensed physician who treated the claimant during his confinement to have rendered him of unsound mind, or (2) is generally accepted by the medical community as one causing unsound mind." Fisher at 484, syllabus.
 {¶ 49} In Fisher, after sustaining permanent paralysis following a diving accident, Brian Fisher sued Ohio University, alleging the university was negligent. Granting the university's motion for summary judgment, the trial court determined the statute of limitations barred Fisher's claim, and Fisher's allegation of unsound mind did not toll the limitations period pursuant to former R.C. 2305.16. In considering the matter on appeal, the Supreme Court noted Fisher, in his response to the university's motion for summary judgment, presented only one substantive assertion in support of his contention the statute of limitations was tolled under former R.C. 2305.16: "that the condition caused emotional distress and required medication, both of which made Fisher unable to understand his legal rights." Id. at 487. The Supreme Court observed that a "nebulous assertion of emotional distress does not create an issue of fact concerning unsound mind." Id. at 488. Finding "no evidence was submitted by Fisher in support of his argument that his medication caused unsoundness of mind, save his unsupported conclusion that the medication caused his inability to understand his legal rights[,]" the Supreme Court determined the statute of limitations was not tolled. Id.
 {¶ 50} Fisher, however, is factually distinguishable from plaintiffs' case. Here, plaintiffs do not make an unsupported "nebulous assertion of emotional distress" to bolster a claim of unsound mind. Rather, plaintiffs contend a traumatic closed head injury Paul Olvera suffered on June 5, 1995, resulted in cognitive deficits that rendered him to be of unsound mind, and plaintiffs attached medical documentation in support of their contention. See outpatient psychiatry consultation dated May 3, 1996.
 {¶ 51} Moreover, on June 23, 1995, only 18 days after the accident, a Michigan probate court appointed Elena Martinez temporary guardian, and later, on July 10, 1995, the same court appointed Elena Martinez to be full guardian because of Olvera's "mental illness" and "physical illness or disability." The only reasonable inference from the foregoing evidence in combination is that the June 5 accident caused Olvera to be of unsound mind immediately following the accident, thereby tolling the statute of limitations under former R.C. 2305.16. Accordingly, the statute of limitations was tolled for the period from June 5, 1995 to June 23, 1995, rendering plaintiffs' claim against B.P. Products timely filed.
 {¶ 52} Because plaintiffs' claim was timely filed, we consider plaintiffs' contention that asserts a genuine issue of material fact exists regarding plaintiffs' claim against B.P. Products. Plaintiffs correctly contend the evidence creates a genuine issue of fact regarding B.P. Products' status as the manufacturer of the hose at issue. See Depositions of Terry Jackson, dated April 15, 1997, 44, 58-59, and November 6, 1998, 11-13; affidavit of Roger E. Lundstrom, dated November 10, 1998, ¶ 17. Plaintiffs' action against B.P. Products nonetheless fails.
 {¶ 53} As B.P. Products points out, the affidavit of plaintiffs' expert, W. Alan Bullerdiek, only demonstrates that hose failure was a possible cause of the accident, rather than a probable proximate cause of the accident. Under Stinson v. England (1994), 69 Ohio St.3d 451, the expert's opinion is incompetent and inadmissible. See affidavit of W. Alan Bullerdiek, dated February 18, 2001, ¶ 6; see, also, Stinson at 451, paragraph one of the syllabus. Even if B.P. Products manufactured the hose, because plaintiffs' expert failed to meet the standard for showing the hose was a proximate cause of the accident, the trial court properly granted summary judgment to B.P. Products. Accordingly, we overrule plaintiffs' third and fourth assignments of error concerning B.P. Products.
 {¶ 54} Having overruled all of plaintiffs' assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
BOWMAN and GLASSER, JJ., concur.
GLASSER, J., retired, of the Sixth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.